FIDELITY LOAN SECURITIES COMPANY, Appellant, v. WILLIAM C. MOORE.

In Banc, December 22, 1919.

1. **DEPARTURE: Demurrer: Absence of Original Petition.** If the trial court sustained a demurrer to the amended petition, a ground therein that the said petition was a departure from the original petition cannot be considered on appeal in the absence of said original petition from the record.

2. **CONTRACT: To Be Governed and Construed By Laws of Another State.** Parties by their written contract concerning the purchase and transfer of lands in Texas may lawfully agree therein that their obligations and agreements are to be construed and governed according to the laws of said foreign state, even though they may not at the time be domiciled there.

3. ———: ———: **Not Pleaded: Specific Performance.** A petition to enforce a contract which contained an agreement that "in case of dispute, or in case of litigation to enforce any of the provisions of this contract, or any note herein mentioned, then the notes and the contract shall be construed and interpreted and given force and effect of and by virtue of the existing laws of the State of Texas, as interpreted by the courts of said State," does not state a cause of action if it fails to plead said laws and their construction. Said agreement is lawful and a vital part of the contract, and the court cannot take judicial notice of such laws or the construction thereof, and to be available as a guide to the "litigation" they must be pleaded.

*Held*, by BLAIR, J., dissenting, that since the contract was made in Texas and pertains to the purchase and conveyance of Texas lands, the laws of that state would have applied without such agreement, and the proper procedure is to apply the law of the forum and presume the laws of Texas to be the same as our own, and that no duty rests upon either party to plead and prove the laws of Texas as a condition of his being heard.

4. **PLEADING: Laws of Another State.** Statutes of other states are regarded as matters of fact, and when relied on to support a cause of action or defense must be pleaded and proved, as other facts.

5. ———: ———: **Specific Performance: Common Law.** In Missouri the doctrine and right of specific performance come from the equitable doctrines of the common law, and Texas has no common law, and if by statute she has adopted such law, it is necessary, in a suit for specific performance of a contract, which stipulated that it is to be construed according to the statutes and decisions of the courts of Texas, to specially plead those laws and constructions. [BLAIR, J., dissenting.]

Appeal from Polk Circuit Court.— *Hon. C. H. Skinker,* Judge.

AFFIRMED.

*Herman Pufahl* and *W. F. Zumbrunn* for appellant.

(1) The assignee of a written contract for the sale or purchase of land can maintain in his own name a suit for specific performance. 36 Cyc. 758. (2) Specific performance is not one wholly resting in the discretion of the court, but one to be exercised by a just and reasonable discretion and not in an arbitrary or capricious manner. Kirkpatrick v. Pease, 202 Mo. 493; Evans v. Evans, 196 Mo. 23; McCall v. Atchley, 256 Mo. 54; Beheret v. Myers, 240 Mo. 77; Edwards v. Watson, 258 Mo. 646. (3) Specific performance will lie in given cases; defendant's demurrer confessed all well pleaded facts and therefore the trial court exercised its discretion in an arbitrary and capricious manner and not in a just and reasonable way.

GRAVES, J.—This is an action by an assignee of a vendor of certain Texas real estate, to specifically

enforce the contract.   Petition was filed in two counts.
The first count was a simple action at law upon a
promissory note.   The second count was in equity for
the specific performance of a certain contract pleaded
and set out *in haec verba* in the petition.   Demurrers
were filed to both counts of the petition.   The court
overruled the demurrer to the first count, but sus-
tained the demurrer to the second count.   Thereupon
the plaintiff dismissed the first count, and elected to
stand upon the second count.   Judgment in accordance
was rendered against the plaintiff, and from such judg-
ment this appeal was taken to this court.   The suffi-
ciency of the second count is the matter here for de-
termination.   The demurrer to this count reads:

"Defendant specially demurs to the second count
of the plaintiff's amended petition for the following
reasons:

"1st.   Because said count is a departure from the
original petition in this cause.

"2nd.   Because said count does not state facts suf-
ficient to confer jurisdiction on this court or constitute
a cause of action.

"3rd.   Because the court has no jurisdiction of the
subject of the action.

"4th.   Because said count does not state facts suf-
ficient to constitute a cause of action.

"Wherefore defendant asks judgment."

The second count of the petition with which we are
concerned is a bill in equity seeking to enforce the
specific performance of a contract.   The contract, set
out *verbatim* in the petition, is between the White Star
Land Company, a corporation, and William C. Moore,
the defendant, and by its terms the White Star Land
Company agrees to sell and convey to Moore a tract
of land of 76,627 acres, described, in Hidalgo County,
Texas, together with certain water rights.

The consideration for the purchase provided in
the contract was $13,409.50.   This amount was made

up as follows: $7,400 was represented by a note, due on demand, executed and delivered at the execution of the contract. The purchaser assumed and agreed to pay $3,061.50, which was represented by vendor's lien notes against the property. There were seven of said notes set out in the contract for $514.50 each, the first maturing on the first day of January, 1915, and one maturing each year after that until 1921. Also, the purchaser assumed and agreed to pay the sum of $2,408 represented by vendor's lien notes, five in number, of $481.60 each, the first due and payable on the first day of September, 1915, and one on the first day of September each year after that until the last one should fall due in 1919.

The contract provided that the Star Land Company, on or before the sixth day of July, 1914, or within a reasonable time thereafter, provided all notes theretofore matured shall have been fully paid, would cause to be delivered to the purchaser a warranty deed, to take effect as of the date of the contract conveying said land to the purchaser, "with all water rights, titles and privileges incident or appurtenant thereto," etc.

The Star Land Company was also to deliver to the purchaser a copy of an abstract showing a good, merchantable title to said land, vested in the grantor in said deed. The purchaser was allowed thirty days for the examination of the abstract and the presentation of objections to it, and a reasonable time thereafter was allowed to remedy any defects found in it.

The purchaser further assumed and agreed to pay all taxes and legal assessments upon said land for the year 1914 and thereafter, and water rental charges, etc., from the first day of January, 1915.

If the purchaser should fail to comply with the provisions of the contract and fail to pay any of the notes or refuse to accept the abstract and deed when tendered, it is provided that "this agreement may at the option of the White Star Land Company, or owner of said land, without notice, be terminated, and there-

after the same shall be null, and void, and of no further force and effect,'' and the money and notes already received, as aforesaid, should be forfeited as liquidated damages for failure to carry out the contract.

If the purchaser should default in the payment of any note, or any part thereof, then all the sums mentioned in the contract would, at the option of the White Star Land Company, become due and payable. A vendor's lien was expressly retained and reserved upon the land to secure each and all the payments mentioned in the contract.

There is this stipulation:

''This agreement is made subject to the disapproval of the owner of said land herein agreed to be sold and conveyed, and should such owner disapprove same, then this agreement shall become null and void, in which event all payments made and notes given by purchaser are to be returned to purchaser.''

This further stipulation is found in the contract, pleaded *in haec verba,* as aforesaid:

''It is agreed between the parties hereto, that in case of dispute, or in case of litigation to enforce any of the provisions of this contract, or any note herein mentioned, then the notes herein mentioned and this contract shall be construed and interpreted and given force and effect of and by virtue of the existing laws of the State of Texas, as interpreted by the courts of said State.''

After setting out the contract the petition alleges that at the time of its execution and delivery the defendant William C. Moore, pursuant to the terms thereof, executed and delivered to the Star Land Company his note for $7,400, payable on demand, dated June 6, 1914, and set out a copy of the note. On the back of the note was a provision that at the option of the maker the note might be paid by the conveyance of a tract of land situated in South Dakota, subject to an incumbrance on same. The petition alleged that the plaintiff demanded the payment of the note after

it fell due or the conveyance of the South Dakota land, and defendant refused to comply with any of the terms and conditions of the contract.

The petition then alleged that the plaintiff purchased the said note of $7,400 and the contract from the White Star Land Company, and the assignment by which the transfer was made is set out; that thereby the plaintiff became the owner of the note and the contract, and stood ready, able and willing fully to comply and liquidate the terms of said contract.

It is further alleged that the defendant failed to pay the note for $7,400 on demand and failed within a reasonable time to comply with the terms of the contract; failed to assume the vendor's lien notes mentioned and refused to comply with any terms or conditions of said contract, "although plaintiff has at all times been ready and willing to comply with the said contract and perform all the obligations and conditions therein contained, and has tendered and now tenders to the defendant warranty deed for said land in accordance with the provisions and terms of said contract and offers to perform all obligations devolving upon it by the terms thereof."

The petition then alleges that the plaintiff has no complete and adequate remedy except in a court of equity and prays for a specific performance of the contract and that the defendant be required to pay the $7,400 note and interest and the sum of $514.50, representing the first note assumed and falling due on the first day of January, 1916; and that the said defendant be further required to assume the payment of the residue of the $3,061.50 incumbrance against said land and be required to satisfy all interest and notes maturing prior to the final trial of this cause, and that the rights of the plaintiff and defendant be by the courts fixed and determined and adjudicated herein.

The record does not show the theory upon which the trial court sustained the demurrer. In the brief of appellant it is stated that the original petition was

amended by the addition of the second count, and it is this amended petition which is involved here. This perhaps accounts for one of the grounds of the demurrer. It is also stated in the brief:

"The record is absolutely silent as to the reason the trial court held the demurrer to be well taken as to the second count in the petition, but inasmuch as this court will probably assume the reason that existed, we might say, that the oral statement given by the trial judge to counsel upon the hearing of the demurrer was that the contract in question lacked the elements of mutuality and that specific performance was one in all events resting in the discretion of the court and that therefore he would sustain the demurrer as to the second count."

These statements of counsel are not binding here, and we shall go to the record for the reasons of the court, *nisi*. If upon any ground the demurrer was properly sustained, the judgment *nisi* must be sustained. Respondent does not brief the case here, relying (as he may do) upon the presumption of a right judgment below. The law casts the laboring oar upon appellant, and respondent intrusts his oar (whether laboring or otherwise) to this court.

I. The demurrer, in its first ground, urges that there was a departure from the original petition. We cannot consider this point, because the original petition is not before us in the present record.

**Departure.** All we know of it, is the voluntary statement of counsel in their brief. These statements we cannot consider. Absent from the record of the original petition, this ground of demurrer is not in the case here. This leaves the general statements (1) that the petition does not state facts sufficient to show jurisdiction in the court *nisi*, and (2) that the petition does not state facts sufficient to constitute a cause of action. A discussion of the latter we think will determine the case, and that question we take next.

21—280 Mo.

II. The contract pleaded states that in case of dispute or "litigation to enforce any of the provisions of this contract, or any notes herein mentioned, then the notes herein mentioned and *this contract* shall be construed and interpreted and given force and effect of and by virtue of the existing laws of the State of Texas, as interpreted by the courts of said State."

Contract to Be · Construed by Laws of Another State.

The present action is litigation to enforce the contract by decreeing a specific enforcement thereof. The petition nowhere pleads the existing laws of Texas, or the construction thereof by the courts of Texas. In other words the parties solemnly agree that their contract shall be governed by the Texas laws, as construed by the Texas courts, yet the petition fails to aver those laws and their construction. This is an integral and vital part of this contract, so made by the solemn agreement of the parties. By this reference, these laws and their construction by the Texas courts is as much in the contract as if fully written therein, and in suing upon the contract the petition should have averred the effect of the existing Texas laws, as construed by the courts of that State. It is difficult to see how a Missouri chancellor could specifically enforce the contract without being fully advised as to all the terms of the contract. For aught we know there may be no such doctrine as specific performance under the laws of Texas. The State of Texas, we judicially know, was not formed from territory at any time governed by the English common law.

But, to the real point of the case. The parties had the right to contract, and to agree in such contract that the laws of Texas should govern their contract. This intention of the parties will be carried out by the courts, when they are called upon to enforce the contract. In other words, it is a vital part of the contract. The rule is thus stated in 9 Cyc. pages 665 and 666.

"Where the parties have expressly provided that the contract shall be governed by the law of a particular country this intention will as a rule be carried out by the courts. Thus where two persons make a contract in England, but by its very terms it is provided that it shall be governed by the laws of Scotland, the law of Scotland then becomes the proper law of the contract, and the law by which it is to be interpreted and its legality decided. Parties may substitute the laws of another place or country than that where the contract is entered into, both in relation to the legality and extent of the original obligation, and in relation to the respective rights of the parties, for a breach or violation of its terms. This is part of the *jus gentium,* and is enforced *ex comitate,* when the enforcement of the contract is sought in the courts of a country governed by a different rule than the local or adopted law of that contract."

In the instant case, this vital part of the contract, i. e. the laws of Texas and their construction by the courts of Texas, is not pleaded, and the court thereby left in the dark as to what the real contract is, and therefore left without this aid in the enforcement of it. It is shown upon the face of the petition that the plaintiff has failed to plead a material and vital portion of his contract.

Reverting to the right to contract to the effect that the laws of a certain State- or country shall govern the contract, in the early case of McAllister v. Smith et al., 17 Ill. 1. c. 334, we find a clear enunciation of the rule now generally recognized.

"But parties may substitute the laws of another place or country, than that where the contract is entered into, both in relation to the legality and extent of the original obligation, and in relation to the respective rights of the parties for a breach or violation of its terms. This I call a substitution of the laws of another place or government, for those of the place of

entering into the contract, and which is noted by the authorities as an exception to the general rule. This is allowed in all civilized countries, and recognized as part of the *jus gentium*, or law of nations, respecting private and personal rights, and in all cases, where the subject-matter of the contract is not *malum in se*, immoral, or contrary to the local policy, or dangerous to the peace and good order of the particular community, in which it is sought to be enforced. When parties seek to enforce such obligations, in the courts of the country whose laws have been adopted as those of the contract, it presents only an ordinary case of jurisdiction to the court, over a contract made under the same laws of the forum, and by parties within its jurisdiction. But when the enforcement of the contract is sought in the courts of a country governed by a different rule than the local or adopted law of that contract, the law governing it has no force or obligation *ex proprio vigore*, in that forum, but *ex comitate*, under the general public law, the court will enforce it, giving extra territorial effect to the laws of another government, where it is not dangerous, inconvenient, immoral, nor contrary to the public policy of the local government.''

This doctrine is fully discussed and recognized in Le 'Breton v. Miles, 8 Paige (N. Y.) 261. The English rule is the same. In Greer v. Poole et al., 5 Law Reports (Queen's Bench Division), l. c. 274, it is said:

''It is no doubt competent to an underwriter on may contract with reference to the laws of another an English policy to stipulate, if he think fit, that such policy shall be construed and applied in whole or in part according to the law of any foreign State, as if it had been made in and by a subject of the foreign State, and the policy in question does so stipulate as regards general average, but except when it is so stipulated the policy must be construed according to our law and without regard to the nationality of the

In fact it is a generally recognized rule that parties vessel.''

State or country, although they may not be domiciled there at the time of making the contract, and these contracts will be enforced and recognized in other forums where contrary rules of law may prevail.

III. With the undoubted right to contract with reference to the application of the laws of Texas, the next and vital matter is, should those laws have been pleaded by the plaintiff in this case, in order to make its case. We think so, and have suggested some thoughts along this line in the paragraph above.

However, the general rule is thus tersely stated in 36 Cyc., p. 1240: "Statutes of other States are regarded as matters of fact, and when relied on to support a cause of action or defense must be pleaded and proved."

This rule has the approval of this court. In Lee v. Mo. Pac. Ry. Co., 195 Mo. l. c. 415, VALLIANT, J., said: "When one relies on the law of a foreign country or of a sister State for his right of action he is required to state in his pleading what the law of the foreign jurisdiction is. Such a law is to be pleaded and proven as a fact."

See also Mathieson v. Railroad, 219 Mo. l. c. 547 et seq.

In the instant case the laws of Texas are made a part of this contract by direct reference. They constitute a part of the very cause of action, and should have been pleaded as well as proven in the trial of the case.

Nor is this all. The doctrine of specific performance is an equitable doctrine and a part of our common law. It comes to us from the common law. [36 Cyc. 543 et seq; 26 Am. & Eng. Ency. Law, p. 14.] In Missouri we have no statute covering the doctrine, except in cases of administration. [Vide Secs. 177 to 185, R. S. 1909.] So that if we could even presume that the statute laws of Texas were the same as ours, we would still have no statutory authority for the present

action. In this State our right for specific performance comes from the equitable doctrine of the common law. But Texas had no common law, and if she by statute adopted such law, the statute must be pleaded and proven. [Mathieson v. Railroad, 219 Mo. l. c. 550, et seq. and cases therein cited.]

We therefore conclude that the failure to plead the laws of Texas and the construction of the same given by the courts of that State, rendered this petition fatally defective, and subject to the demurrer interposed. Other questions need not be discussed. The judgment *nisi* was right, and should be affirmed. It is so ordered. *Walker, C. J.,* and *Goode* and *Williamson, JJ.,* concur; *Williams, J.,* concurs in result; *Blair, J.,* dissents; *Woodson, J.,* not sitting.

BLAIR, J. (dissenting).—The record shows the land is in Texas and the contract was made in Texas. The laws of Texas would have applied without a stipulation in the contract to that effect. The stipulation made expresses that which, without it, would have been implicit. In my opinion, the proper procedure is to apply the law of the forum, or (Philpott v. Ry. Co., 85 Mo. l. c. 167) presume the law of Texas to be the same as our own. It is not necessary, in this case, to discuss the difference between these two courses. I think the authorities to be cited establish the correctness of this view and of its applicability here. If either party desire to plead and prove the Texas law, he may. No duty rests upon either to do so as a condition of his being heard. [Cherry v. Sprague, 187 Mass. 113, 67 L. R. A. 3 and note; Parrot v. Railway, 207 Mass. 184, 34 L. R. A. (N. S.) 261, and note; Cuba Railroad Co. v. Crosby, 222 U. S. 473, 38 L. R. A. (N. S.) 40, and note.] The burden of bringing forward the law of a state like Texas is upon him who may desire the protection of that law, and is not, in the first instance, a duty of either party. For these reasons I am under the necessity of withholding my concurrence.