## ESTES v. E. B. ESTES & SONS.

District Court, D. Massachusetts. July 12, 1927.

No. 2798.

1. Receivers ⬅77(1)—Proceeds of assigned accounts collected by assignor's receiver held property of assignee.

Contract assigning accounts receivable in consideration of advances thereon *held* to vest title in assignee and make assignor its agent for collection, and amounts collected by receiver of assignor were property of assignee.

2. Receivers ⬅78—Assignee of accounts held entitled to recover from receiver of assignor actual expenses and reasonable attorney's fees incurred in enforcing the contract.

Provisions in a contract for assignment of accounts receivable *held* to entitle assignee to recover from receiver of assignor actual expenses and reasonable attorney's fees incurred in connection with enforcing the contract.

In Equity. Suit by Joseph B. Estes against E. B. Estes & Sons. On petition of Walter Powers, receiver, for instructions respecting claim of the Merchants' Transfer & Storage Company. Instructions given.

Walter Powers, of Boston, Mass., pro se.

Percy A. Atherton and Friedman, Atherton, King & Turner, all of Boston, Mass., for claimant.

BREWSTER, District Judge. This is a petition for instructions, brought by the receiver, wherein he represents that E. B. Estes & Sons (hereinafter called the Estes Company) entered into a contract with the Merchants' Transfer & Storage Company. (referred to hereinafter as the Finance Company), under which contract the Finance Company purchased of the Estes Company certain accounts receivable and agreed to pay therefor 100 per cent. of the face value thereof, of which 77 per cent. was paid upon acceptance of the account, and the balance, plus or minus adjustments, was to be paid when the account had been paid by the debtor. The contract provided that the Estes Company could collect the accounts and promptly pay over the proceeds to the Finance Company. The petition further shows that all moneys due the Finance Company under said contract have been paid, or are about to be paid, except that the Finance Company claims compensation, attorney's fees, and other charges, concerning the legality of which claim the receiver is in doubt, and has accordingly requested instructions whether he shall resist, in whole or in part, the claim.

[1] In order to dispose of the petition, it will be necessary to refer more in detail to certain pertinent provisions of the contract; but before doing so it may be well to refer to certain general propositions, which seem to have been established by courts which have been called upon to construe contracts of this nature. Assignments made pursuant to these contracts have been held to operate to pass the legal title to the account, and to vest in the assignee the ownership of the proceeds received therefrom. The contract has also been held to constitute the assignor the agent of the assignee for the purpose of collecting the assigned accounts. Matter of Lutz & Schramm Co., Inc., 235 F. 970, 38 Am. Bankr. Rep. 351; In re Hawley Down-Draft Furnace Co., 238 F. 122, 38 Am. Bankr. Rep. 219; Ramsey v. Marlin Firearms Corp. (D. C.) 14 F.(2d) 314.

It has also been held that the receiver has no greater rights under the contract than could be asserted by the assignor. Boise v. Talcott (C. C. A.) 264 F. 61; In re Rosenblatt (D. C.) 299 F. 771.

Although apparently in the present case the proceeds of the assigned accounts are in the hands of the receiver, in legal contemplation they must be held to belong to the Finance Company, and the rights of the parties must be determined accordingly. Undoubtedly the Finance Company could set off any amount legally due it for compensation in any proceeding brought by the receiver to recover the balance of the purchase price. Ramsey v. Marlin Firearms Corp., supra.

[2] The Finance Company claims to be entitled to receive, as compensation accruing prior to March 14, 1927, the date of the appointment of the receiver, $2,412.64; compensation accruing subsequent to March 14, 1927, $702.27; and attorney's fees and expenses, $1,000.

The pertinent provisions of the contract are found in the second, third, and fourth clauses thereof. The second clause provides in substance that the assignors shall pay for all salaries and all expenses of travel of auditors of the Finance Company, who have a right to call every 30 days, or oftener, to inspect and audit the books of the assignor. The third and fourth paragraphs are as follows:

"Third. Second party will: (a) Place its collection department at the disposal of first party, and upon request endeavor to collect direct from the debtors any accounts purchased hereunder. (b) Have its auditor give first party his report of each examination as above, with full instructions as to the best method of keeping the books, records and accounts of first party. (c) Place its

credit department at the disposal of first party and pay for all accounting, postage, and credit investigation of accounts purchased or. offered for purchase hereunder, and upon request give credit and financial advice. (d) Permit first party to submit any of its sales contracts with its customers to the general counsel of second party for advice and opinion as to the form and legality thereof. (e) Accept at par, subject to payment, all remittances received through first party, and pay the cost of all exchange on points within the United States. (f) Obtain and have on hand at all times sufficient funds to make prompt remittance to first party for all acceptable accounts. (g) Supply all forms proper for assignment of accounts hereunder and assist in the prompt .collection thereof.

"Fourth. The total compensation to be paid by first party for all services and other considerations specified in lines 17 to .37 hereof, it is hereby agreed shall be one-thirtieth of 1 per cent. of the face value of accounts for each day from date of purchase by and until paid to second party, plus $5 per $1,000 only on the first $100,000 of accounts purchased within any one year from the date of this contract. This compensation shall be payable to second party not later than the 10th day of the month immediately following that for which such compensation is due."

I do not understand that any claim is made that the compensation is not accurately computed. The doubt in the mind of the receiver apparently concerns the right of the Finance Company to receive the full amount of this compensation, in view of the fact, which the receiver intimates he can establish, that all of the services required to be rendered by the Finance Company were not rendered. It will be noted that much of the service was to be rendered only upon request of the Estes Company. It is not suggested that any request was made, or that it could be shown that the Finance Company refused to render any of the service required by the terms of the contract. The only service which might have been of benefit to the company, and which was not conditioned upon a request, was the agreement to give instructions as to the best method of keeping the books, records, and accounts of the first party.

The receiver represents that he could show that these instructions were never given, and that, if they had been given, the Estes Company might have derived a benefit therefrom. At most, this would indicate a possibility that the receiver could show a partial failure of the consideration for which the promise of compensation was made, but whether or to what extent the amount of compensation could be reduced thereby is exceedingly uncertain, especially as the failure was. not willful and was apparently fully acquiesced in by the Estes Company. In any event, the reduction, if any, would not justify the expense of litigation. Furthermore, the compensation is obviously in lieu of interest, and the real intent of the parties is probably more or less camouflaged in the above-quoted provisions of the contract. The service rendered for which the Estes Company was willing to pay was the advancement of money upon its receivables, enabling it to use the proceeds of the accounts without awaiting their maturity or payment. This service was rendered, and was quite likely all the parties actually contemplated. The court is not called upon to inquire into the reasonableness of this compensation. It is the contract which the Estes Company entered into, and the receiver is bound thereby, even though it should be deemed to be of little or no advantage to the company. See Ramsey v. Marlin Firearms Corp., supra.

The receiver, therefore, is instructed not to resist the claim of the Finance Company for compensation accruing both before and after his appointment.

As to the claim for reasonable attorney's fee and expenses, the same contract in the seventh clause thereof entitles the Finance Company to recover in case of breach of warranty attorney's fees, court costs, and other expenses which may be expended or incurred by the Finance Company to obtain or enforce payment for any account purchased either against the debtor or against the assignor. There is a breach of the Estes Company's warranty that there would be no suspension of business or act amounting to a business failure by or against it, and I rule that the Finance Company is entitled to deduct the actual expenses incurred or made and a reasonable attorney's fee in obtaining the proceeds of the accounts collected by the receiver.

I do not understand that it has been obliged to take any action to obtain or enforce payment from any debtor, or that it has been required to do more to obtain payment from the receiver than to appear upon the petition for instructions now under consideration. If this is so, I would be inclined to regard an attorney's fee of $1,000 as somewhat excessive. I have no way of determining how much of the claim for fees and

expenses represents expenses and how much attorney's fees. I therefore instruct the receiver to pay the actual expenses of the Finance Company in connection with this petition and a reasonable attorney's fee for services rendered.

If I have assumed the existence of any fact which does not exist, or if, for any other reason, the receiver desires further instructions, he may apply therefor. I am hopeful, however, that in view of the above the receiver will be able to adjust all matters arising between the Estes Company and the Finance Company.