MERCHANTS' & MANUFACTURERS' SECURITIES CO. v. JOHNSON.*

No. 9772.

Circuit Court of Appeals, Eighth Circuit.

March 5, 1934.

*Rehearing denied May 9, 1934.

Edward Rothbart, of Chicago, Ill. (Samuel A. Dew, of Kansas City, Mo., on the brief), for appellant.

R. R. Brewster, of Kansas City, Mo., for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

GARDNER, Circuit Judge.

By an order of the District Court for the Western District of Missouri, entered December 21, 1931, Nelson E. Johnson was appointed receiver of the Atlantic, Pacific & Gulf Oil Company and the Pennsylvania Petroleum Company, and by leave of court appellant, a Delaware corporation, intervened in the receivership proceedings, claiming certain amounts due it from the two corporations by reason of its purchase of certain accounts from them on which collections had been made by the receiver; it being alleged that the moneys so collected were trust funds in the hands of the receiver. The amount of the indebtedness was not contested, but it was claimed that, under the usury laws of Missouri, the claims were usurious, and that the appellant, being a foreign corporation which had not complied with the foreign corporation laws of the state of Missouri, could not maintain an action thereon.

The lower court by its decree allowed appellant's claims as general ones against the receiver, less a small counterclaim in favor of the receiver, but denied it the right to enforce the assignments, and held that the contracts constituting appellant's claims were usurious. From the decree entered, the intervener has appealed.

In the lower court two issues were presented: (1) Were the contracts of appellant, on which its claim was based, usurious; and (2) was appellant transacting business in Missouri without having complied with the foreign corporation law of that state?

Appellant alleged and proved three separate contracts as the basis of its claims. Two of these, dated respectively January 26 and September 9, 1931, were executed by appellant and the Atlantic, Pacific & Gulf Oil Company, and the third, dated December 9, 1930,

was executed by appellant and the Pennsylvania Petroleum Company. The contracts are substantially identical in their terms. They recite a desire on the part of the party of the first part to obtain the advantages of the services offered by appellant, and a desire to sell appellant accounts receivable, notes, leases, mortgages, acceptances, contracts, and choses in action, and, by these contracts, appellant in form agreed during the continuance of the contracts to purchase of the Atlantic, Pacific & Gulf Oil Company and of the Pennsylvania Petroleum Company respectively, and said companies agreed to sell to appellant certain accounts receivable, notes, leases, mortgages, acceptances, contracts, and choses in action therein designated as accounts, the appellant paying the full face value thereof, of which a part (75 per cent. in one, and 70 per cent. in the other two contracts) should be paid in cash at the time of the acceptance of such assignments, the balance upon receipt of full payment of the obligation. Appellant permitted the other party to the contract to collect open accounts which had been assigned; it being granted the right to check its customers' books and records at least every thirty days or oftener.

Appellant, by these contracts, agreed to perform services as follows: (1) To place its collection department at the disposal of the other party, and upon request endeavor to collect direct from debtors any accounts purchased; (2) have one of its auditors every sixty days or less call at the place of business of the other party to examine, audit, and check its books, records, and accounts; (3) have the auditor give full instructions as to the best method of keeping books, records, and accounts; (4) pay all salary of the auditor and all expenses of traveling, auditing, accounting, and postage, unless incurred by a breach of warranty in respect to the assigned obligations; (5) place its credit department at the disposal of the other party, and pay for all credit investigations of obligations purchased or offered for purchase, and upon request give credit and financial advice; (6) permit the other party to submit any of its contracts to counsel for appellant for advice and opinion as to the form and legality thereof; (7) obtain and have on hand at all times sufficient funds to purchase of the other party all obligations acceptable to appellant; (8) supply all forms and stationery proper for the sale and assignment of obligations.

The agreement contained provision that all acts, agreements, certificates, assignments, transfers, and transactions under it, and all rights of the parties thereto, "shall be governed as to validity, enforcement, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of Illinois."

Appellant's principal office and place of business was in Chicago, Ill., and it was licensed to do business in that state. The Atlantic, Pacific & Gulf Oil Company, a Delaware corporation, had its principal place of business at Kansas City, Mo., as did its subsidiary, the Pennsylvania Petroleum Company, a Missouri corporation. Each of the contracts here involved recites that it was entered into at Chicago, Ill., and in each instance was signed by officers of the Oil Company and the Petroleum Company at Kansas City, Mo., and was then sent to appellant at Chicago, where it was approved and executed by the officers of appellant, who retained one duplicate original and sent the other to the other party to the contract.

From time to time, assignments of accounts receivable were made to appellant. These were in writing, executed at Kansas City, Mo., and sent to appellant at Chicago, Ill., for approval. When so approved, remittances, pursuant to the contract, were made by appellant from Chicago. As collections of the accounts were made by the assignors, remittances were made to appellant in Chicago, and a report of collections was sent to appellant daily.

During the term of these contracts, and prior to the appointment of a receiver, auditors of appellant came to Kansas City, Mo., and examined the books of the two companies. In November, 1931, at the request of appellant, a Mr. Shriver was placed in the office of the companies at Kansas City to supervise the collection of money and the handling of the accounts. He remained on this work about a month; his salary being paid by the companies. Appellant kept a deposit in a Kansas City bank, had some fifteen or twenty other customers in Missouri at and prior to the time of entering into these contracts, and had solicitors and auditors on the road who checked customers' assigned accounts from time to time, and made suggestions as to the keeping of such accounts.

By statute of Illinois in effect during the time of all the transactions here involved, it was provided that, "with respect to money loaned to or in any manner due and owing from a corporation, the parties may stipulate or agree upon any rate of interest whatsoever, and take and pay the same." Smith-Hurd

Rev. St. Ill. 1929, c. 74, § 4, Cahill's Illinois Statutes, 1929 Ed., c. 74, § 4, pp. 1594–1595. It is also provided by statute in Illinois that a corporation may "borrow money at such rate of interest as the corporation may determine without regard to or restrictions under any usury law" of that state, and may "mortgage or pledge its property, both real and personal, to secure the payment thereof." Smith-Hurd Rev. St. Ill. 1929, c. 32, § 6, Cahill's Illinois Statutes, 1929 Edition, c. 32, par. 6, p. 670.

In Missouri, parties may agree in writing for the payment of interest not exceeding 8 per cent. per annum. Section 2840, R. S. Mo. 1929 (Mo. St. Ann. § 2840, p. 4627). In case of a lien upon personal property pledged or mortgaged to secure indebtedness, the receipt or exaction of usurious interest makes the mortgage or pledge invalid. Section 2844, R. S. Mo. 1929 (Mo. St. Ann. § 2844, p. 4633).

The accounts receivable which were the subject-matter of these contracts bore no interest, but the contracts provided for a charge of ½₇ of 1 per cent. per day of the face value of the accounts, which is designated as a service charge. If this charge be considered as interest, it exceeded the 8 per cent. per annum maximum interest charge allowed by the law of Missouri. If, however, the contracts are to be governed by the law of Illinois, they are not subject to the charge of usury, even if we accept the view of the lower court that these contracts were for the loaning of money and pledging of security. Both parties seem to have adopted this construction of the contracts, but, in the view we take, we think it is immaterial whether they were contracts for the loan of money and the pledge of accounts receivable to secure such loan, or contracts for the purchase of accounts receivable; and we shall therefore accept the construction placed upon these contracts by the lower court and acquiesced in by both parties, expressing no opinion as to the correctness of that view.

Illinois was the principal place of business of appellant. So far as disclosed by the record, no officer or agent of appellant with executive authority has ever resided in or had an office in Missouri, nor attended to its business in Missouri. The contracts expressly declared that the law of Illinois should control. Wharton, in his Conflict of Laws, § 510, in discussing the rule with reference to a stipulation of this character, says: "Assuming that their real, bona fide intention was to fix the situs of the contract at a certain place which has a natural and vital connection with the transaction, the fact that they were actuated in so doing by an intention to obtain a higher rate of interest than is allowable by the situs of some of the other elements of the transaction does not prevent the application of the law allowing the higher rate."

In the instant case, the last act toward the completion of the contracts was performed in Illinois. Illinois was the principal place of business of one of the contracting parties. The parties expressly designated Chicago, Ill., as the place of the execution of the contracts. The parties agreed that the contracts should be governed in all legal aspects by the laws of Illinois. While the contracts were performed in both states, the acts of the appellant in performing the contracts were largely carried out in Chicago, Ill., its principal office and place of business. The money was remitted by appellant, by check drawn by it in Chicago, Ill., and mailed in that city. The assignment of each separate account receivable was sent to appellant at Illinois, where it was received, accepted, and approved. Remittances made by the oil or petroleum company to the appellant under these contracts were mailed to and received by appellant at Chicago, Ill., with the exception of a few weeks, during which time they were deposited to appellant's account in a bank in Kansas City, Mo., on which withdrawals were made by check drawn by appellant at its principal place of business in Chicago, Ill., and the whole indebtedness of the oil and petroleum companies was payable at Chicago, Ill. In view of all these facts and circumstances, we think the declared purpose of the parties to the contracts, that they should be governed by the laws of Illinois, should be given effect. Seeman v. Philadelphia Warehouse Co., 274 U. S. 403, 47 S. Ct. 626, 627, 71 L. Ed. 1123; Le Sueur v. Manufacturers' Finance Co. (C. C. A. 6) 285 F. 490, 496; Brierley v. Commercial Credit Co. (D. C.) 43 F.(2d) 724, affirmed (C. C. A.) 43 F.(2d) 730; Davis v. Tandy, 107 Mo. App. 437, 81 S. W. 457; Fidelity Loan Securities Co. v. Moore, 280 Mo. 315, 217 S. W. 286, 288.

In Seeman v. Philadelphia Warehouse Co., supra, suit was brought for the conversion of certain property pledged as security for a loan. The defense urged was that the transaction was usurious and therefore void under the laws of New York, where the pledgor conducted its business, and where it was contended the pledge agreement was made. The parties were not agreed as to the legal effect

to be given to the transaction; it being contended by pledgor that the transaction was a loan of money disguised as a loan or sale of credit. In an opinion by Mr. Justice Stone, after brushing aside the controversy as to whether the contract was entered into in New York or Pennsylvania as immaterial, it is said: "Respondent, a Pennsylvania corporation having its place of business in Philadelphia, could legitimately lend funds outside the state, and stipulate for repayment in Pennsylvania in accordance with its laws, and at the rate of interest there lawful, even though the agreement for the loan were entered into in another state, where a different law and a different rate of interest prevailed."

In Le Sueur v. Manufacturers' Finance Co., supra, it is said: "We think it clear that the loan contract was a Maryland contract, and is to be governed and construed according to the laws of that state. The original contract of July 26, 1912, states that it is 'entered into at Baltimore, Md.' In the body of the contract it is declared 'that the provisions of this agreement shall be construed and interpreted in accordance with the laws and decisions of the state of Maryland.' Baltimore was the Finance Company's principal place of business, where it carried on transactions of the nature of those involved here. It was entirely competent for the parties to the contract effectually to agree that the laws of Maryland should govern its construction. Penn Co. v. Mechanics' Co. (C. C. A. 6) 72 F. 413, 418, 19 C. C. A. 286, 38 L. R. A. 33, 70; Russell v. Grigsby (C. C. A. 6) 168 F. 577, 579, 580, 94 C. C. A. 61. It is thus not important that the contract was prepared at Nashville, and there signed by the Manufacturing Company and forwarded to the Finance Company at Baltimore, where it was executed by that company and a copy sent therefrom to the Manufacturing Company."

In Fidelity Loan Securities Co. v. Moore, supra, it is said: "The parties had the right to contract, and to agree in such contract that the laws of Texas should govern their contract. This intention of the parties will be carried out by the courts, when they are called upon to enforce the contract."

■ As pointed out by the Supreme Court in Seeman v. Philadelphia Warehouse Co., supra, the only qualification to be placed upon this rule is that the stipulation for the application of the law of a particular state must have a normal relation to the transaction. In that case the contract stipulated for the repayment in Pennsylvania. In holding that this provision of the contract was not objectionable as an evasion of the laws of New York which might otherwise have been applicable, the court said: "Here respondent, organized and conducting its business in Pennsylvania, was subject to laws of that state, and had a legitimate interest in seeking their benefit. The loan contract, which stipulated for repayment there, and which thus chose that law as governing its validity, cannot be condemned as an evasion of the law of New York, which might otherwise be deemed applicable."

Again the court said: "The fact that in some instances wholly unexplained such payments were received elsewhere affords no basis for the contention that the written stipulation for payment in Philadelphia was not the real one, or that its obligation was waived."

■ Appellant selected the state of Illinois as its principal place of business, as it had a right to do, and, that being its principal place of business, it had a legitimate interest in seeking the benefit of the laws of that state. As the contracts, construed by the laws of Illinois, were not usurious, the assignments delivered pursuant thereto were likewise free from the taint of usury.

■ It was the contention of the appellee in the lower court that appellant could not maintain this action because it had not complied with the foreign corporation statutes of the state of Missouri. Sections 4596, 4598, 4599, R. S. Mo. (Mo. St. Ann. §§ 4596, 4598, 4599, pp. 2030, 2034, 2040). The lower court, however, held against the contention of appellee, and entered judgment against him, from which he has not appealed. If appellee was correct in this contention, then the lower court should have dismissed the action, but, instead of so doing, the court entered judgment in favor of appellant and against appellee. The case is peculiar, in that appellant has appealed from the judgment in its favor, and appellee is seeking to sustain a judgment against itself. Appellant, of course, does not complain of the court's holding, and, in the absence of a cross-appeal, questions decidedly adverse to appellee will not be considered on appeal. Jones Store Co. v. Dean (C. C. A. 8) 56 F.(2d) 110; Guardian Savings & Trust Co. v. Dillard (C. C. A. 8) 15 F.(2d) 996; Texas Co. v. Central Fuel Oil Co. (C. C. A. 8) 194 F. 1; O'Neil v. Wolcott Mining Co. (C. C. A. 8) 174 F. 527, 535, 27 L. R. A. (N. S.) 200; Peoria Ry. Co. v. United States, 263 U. S. 528, 44 S. Ct. 194, 197, 68 L. Ed. 427.

In the last-cited case, the Supreme Court said: "The appellees can be heard before this court only in support of the decree which was rendered."

In O'Neil v. Wolcott Mining Co., supra, it is said: "An appellee or a defendant in error who takes no appeal or writ of error himself cannot, by assigning cross-errors, or by brief or argument, confer jurisdiction upon a federal appellate court to consider, review, or decide rulings against him in the court below."

Neither can we, in the absence of cross-appeal, consider appellee's contention that appellant cannot recover because of its alleged failure to perform its contracts.

It remains to consider the contention of appellant that it is entitled to have the accounts and the proceeds arising therefrom impressed with a trust, and to recover attorney fees as provided in its contracts.

■ The receiver was appointed, not to wind up the affairs of the oil and petroleum companies, but to carry on their business as going concerns. He succeeds to the property of the companies subject to the same liens, limitations, restrictions, or contract rights as obtained at the time of his appointment. He has no greater or different rights than those that might have been asserted by the companies. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; In re Gotham Can Co. (C. C. A. 2) 48 F.(2d) 540; Ramsey v. Marlin Firearms Corp. (D. C.) 14 F.(2d) 314; Estes v. E. B. Estes & Sons (D. C.) 24 F.(2d) 756.

■ The contracts all provided that the first party should transmit or deliver to the second party at its office in Chicago, Ill., on the day of the receipt thereof, all original checks, drafts, notes, acceptances, and other evidences of payment received in payment of or on account of any accounts. Construing the contracts to create a pledge of these accounts as security for the loans advanced, the parties agreed that the total balance of appellant's claim as of December 21, 1931, the date of the receivership, was $32,550.01. These assigned accounts and the proceeds collected thereon by either the companies or the receiver, which have not been paid to the appellant, are impressed with the same trust imposed upon them in the hands of the companies themselves before the receivership.

The contracts, which we have held are governed by the laws of Illinois, and are valid and binding upon the parties, provide that: "If any warranty, expressed or implied, made herein or resulting from the provisions here-of with respect to any account, or made in or resulting from the provisions of the assignment of any account to second party, or from the subject matter hereof, shall be broken or violated either through the act of the first party or others, the damages which second party shall be entitled to recover from first party, as a result thereof, shall include all attorney's fees, court costs and all other expenses which may be expended or incurred by second party to obtain or enforce payment of any account purchased hereunder, either against the debtor, first party, or any of its guarantors, or in the prosecution or defense of any action or concerning any matter growing out of, or connected with the subject matter of this contract and accounts purchased hereunder."

■■ The occasion for the employment of attorneys is undisputed. The appellee, by his action, has necessitated the resort to the court, thus giving rise to the necessity for the employment of attorneys, and we are of the view that appellant is entitled to recover its reasonable attorney fees. In re International Raw Material Corp. (C. C. A. 2) 22 F. (2d) 920; Estes v. E. B. Estes & Sons (D. C.) 24 F.(2d) 756; In re Gotham Can Co. (C. C. A. 2) 48 F.(2d) 540.

There is no finding by the lower court fixing the amount of such attorney fees, although there is evidence in the record as to the value of the legal services rendered. We have held that the judge of the trial or appellate court is an expert himself, and knows as well as a legal expert what are reasonable attorney fees. Neither the lower court nor this court is bound by the opinion of experts on this question. We are not satisfied that the amounts named by the witnesses called are reasonable, in view of all the elements to be considered in determining that question. As said by the Supreme Court in Re Gilbert, 276 U. S. 294, 48 S. Ct. 309, 310, 72 L. Ed. 580: "We were desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance."

The question was not put in issue by any testimony produced by the appellee, presumably on the theory that no amount should in any event be allowed, or on the theory that the court could determine the reasonableness of the attorney fees from the record. But, as said by the Supreme Court in Newton v. Consolidated Gas Co., 259 U. S. 101, 42 S. Ct. 438, 439, 66 L. Ed. 844, "The rights of those

who ultimately pay must be carefully protected."

We therefore fix the fees to be recovered by appellant at $3,000.

The judgment appealed from is reversed, and the cause is remanded to the lower court, with directions to enter decree in favor of the appellant for the sum of $32,489.01, with interest thereon from December 21, 1931, at the rate of 6 per cent., dismissing appellee's counterclaims on the merits, and adjudging that the decree for the recovery of said amount shall constitute a special lien upon all of said accounts receivable still unpaid to the appellant and upon the proceeds of same in the hands of the appellee, and requiring the appellee to pay to appellant all proceeds of such accounts collected by him not in excess of the amount so due the appellant, and, if said appellee shall have disposed of any of such proceeds, that he replace same out of the general funds of said receivership to the amount sufficient to satisfy said part of said judgment and decree; and that appellant also recover of the appellee its reasonable attorney fees, fixed and determined as aforesaid at the sum of $3,000, said amount to be and constitute a general claim against the assets of said corporations in the hands of the appellee as receiver.