UNITED STATES et al., to Use of MER-CHANTS & MANUFACTURERS SECU-RITIES CO. v. JOHNSON et al. *
No. 11133.

Circuit Court of Appeals, Eighth Circuit.
Aug. 9, 1938.

*Rehearing denied Sept. 14, 1938.

William G. Boatright, of Kansas City, Mo. (Edward Rothbart and J. M. Rosenfield, both of Chicago, Ill., I. J. Ringolsky and Harry L. Jacobs, both of Kansas City Mo., Rothbart & Rosenfield, of Chicago, Ill., and Ringolsky, Boatright & Jacobs, of Kansas City, Mo., on the brief), for appellants.

Hale Houts and R. R. Brewster, both of Kansas City, Mo. (Henry L. Jost, L. E. Durham, and Wright Conrad, all of Kansas City, Mo., on the brief), for appellees.

Dupuy G. Warrick, of Kansas City, Mo., as amicus curiæ.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellants brought this action against Nelson E. Johnson, principal, and Columbia Casualty Company, surety, on a bond given by Nelson E. Johnson as equity receiver of Atlantic, Pacific & Gulf Oil Company and Pennsylvania Petroleum Company and other subsidiary companies. The bond was conditioned that the receiver "shall well and faithfully perform the duties of his office and perform all orders of the court concerning said receivership." The bond ran to the United States, and the action was brought by the obligees for the use of Merchants and Manufacturers Securities Company.

Johnson was appointed receiver of the two corporations by the lower court but not by the judge who heard this case, on December 21, 1931, and gave the bond in that proceeding. He continued as receiver until June 19, 1934, when a petition was filed for reorganization of the corporations under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and on June 20, 1934, he was appointed temporary trustee in that proceeding, and by direction of the court, turned over to himself as temporary trustee all the assets of the corporations then in his possession as receiver. He continued as temporary trustee until February 18, 1935, at which time he resigned and a successor was appointed, who was ordered to liquidate the assets still in existence. In his capacity as receiver, he came into possession of the proceeds arising from the collection of certain accounts, which, prior to the receivership, had been assigned to and were owned by appellant Merchants and Manufacturers Securities Company.

Appellant Merchants and Manufacturers Securities Company intervened in the receivership proceeding in February, 1932, claiming that under certain contracts made by it with the corporations, it became the owner by assignment of certain accounts receivable, notes, and other choses in action, which had come into the hands of the receiver and were being collected by him; that the accounts and moneys so collected were a trust fund in the hands of the receiver. The intervener prayed that an order be entered adjudging that the title to the accounts were vested in it and that the

receiver be directed to deliver to it all moneys by him collected; that the receiver discontinue further collection of the accounts, or in any manner interfering with intervener's dominion over the same. In that proceeding, the amount of the indebtedness of the corporations to the intervener was not contested, but the receiver denied appellant's title to the accounts, or the existence of a trust. The lower court, after trial of the issues, held the case under advisement for nearly a year and then entered a decree allowing the intervener's claim as a general one, but denied its right to enforce the assignment. An appeal was taken to this court (Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940), and a decision entered March 5, 1934, which, reversing the lower court, concluded as follows (page 946):

"The judgment appealed from is reversed, and the cause is remanded to the lower court, with directions to enter decree in favor of the appellant for the sum of $32,489.01, with interest thereon from December 21, 1931, at the rate of 6 per cent., dismissing appellee's counterclaims on the merits, and adjudging that the decree for the recovery of said amount shall constitute a special lien upon all of said accounts receivable still unpaid to the appellant and upon the proceeds of same in the hands of the appellee, and requiring the appellee to pay to appellant all proceeds of such accounts collected by him not in excess of the amount so due the appellant, and, if said appellee shall have disposed of any of such proceeds, that he replace same out of the general funds of said receivership to the amount sufficient to satisfy said part of said judgment and decree * * *."

The receiver filed petition for rehearing, which was denied, whereupon he obtained a stay of the mandate and applied to the Supreme Court for certiorari, which was denied October 8, 1934. 293 U.S. 569, 55 S.Ct. 80, 79 L.Ed. 668. The mandate of this court was filed in the lower court October 17, 1934, and a decree was entered pursuant thereto on October 19, 1934, which by its terms was made effective as of March 6, 1933, the date of the original decree from which the appeal had been taken.

The receiver had knowledge of the contracts between appellant and the corporations at the time of his appointment. During all the time that he acted as receiver, he denied the validity of the contracts, collected the moneys due on the assigned accounts, mingled them with the general funds of the receivership, and paid them out in carrying on the business of the corporations.

At the conclusion of the evidence, both parties moved for a directed verdict. The lower court declined to rule upon the motions at that time, but took them under submission and sent the case to the jury upon instructions, to which exceptions were saved. A verdict for defendants was returned by the jury and received conditionally by the court, and appellant was permitted to file motion for judgment non obstante veredicto. The court then overruled motions of both parties for a directed verdict, as well as the motion of appellant for judgment notwithstanding the verdict, and entered judgment upon the verdict for defendants.

In the lower court, the amount of appellant's claim was not in dispute. The sole question before the court was whether or not the condition of the bond was breached by the receiver. On this appeal, appellant urges that the court erred (1) in overruling its motion for a directed verdict and for judgment non obstante veredicto, and (2) in giving certain instructions to the jury.

At the very threshold of the case, we are met by the contention of appellees that appellant waived its right to urge its motion for a directed verdict and that the court was without power to render judgment non obstante veredicto. We shall first consider this question of procedure.

Appellees rely upon the decision of the Supreme Court of Missouri in Everhart v. Bryson, 244 Mo. 507, 149 S.W. 307, establishing a rule of practice in that court to the effect that where a plaintiff, at the close of all the evidence, requests a directed verdict in his favor, which request is overruled, and he thereafter requests and secures instructions on the merits and goes to the jury, he should be held to have waived the objection to the erroneous overruling of his request for a directed verdict. We think there are at least two answers to appellees' contention. In the instant case, the court did not overrule appellant's motion for a directed verdict until after the jury had returned a verdict. Counsel for appellant insisted at all times that his motion should be sustained, and after the return of the verdict he insisted that judgment should be entered for appellant not-

withstanding the verdict. At no time did he take inconsistent positions. But this is a matter of Federal appellate practice, which is not governed by the Conformity Act, 28 U.S.C.A. § 724. Camp v. Gress, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997; Chicago Great Western R. Co. v. Le Valley, 8 Cir., 233 F. 384; Burke Grain Co. v. St. Paul-Mercury Indemnity Co., 8 Cir., 94 F.2d 458.

In the last-cited case we held that appellant had not waived its right to a jury trial by having requested special findings after the court had denied defendant's request to go to the jury, notwithstanding a rule to that effect in the state court. In the course of the opinion in that case, it is, among other things, said (page 463):

"The only way of challenging the sufficiency of the evidence under the federal practice is by motion for a directed verdict, whereas, under the South Dakota practice this question is raised by appeal from the order denying a motion for new trial based upon the alleged insufficiency of the evidence. A waiver must of necessity be an intentional act. The defendant had to meet the situation as the court presented it, even though it acted erroneously."

We conclude that appellant did not waive its motion for a directed verdict.

We think the controlling question is whether or not appellant was entitled to a directed verdict. A consideration of this question necessitates a somewhat detailed recital of the facts involved, but which are undisputed.

Johnson was appointed receiver in a friendly suit. At and prior to the time of his appointment, he was and had been vice-president, director, stockholder, and general counsel of the parent company and all its subsidiaries. The son of the president of the corporations and the several subsidiaries was plaintiff in the receivership suit. It was alleged that the companies, although financially embarrassed, were entirely solvent and that the interests of the creditors and stockholders could best be preserved through a receivership. On the same day of the filing of this suit, the bill of complaint in which was prepared by Johnson, although signed by other counsel, the defendants filed answer admitting the allegations of the bill and consenting to the appointment of a receiver. Not only did Johnson prepare the bill of complaint, but he prepared the answers and the order appointing himself receiver, and personally presented them to the District Judge.

The order appointing receiver contains provision authorizing him "at his discretion to continue, until otherwise directed, the operation of all or any part of the business of said defendants." Upon his appointment as receiver, he filed a bond in the sum of $50,000 with the defendant Columbia Casualty Company as surety, which is the bond involved in this action.

The companies were engaged in private business, consisting of the operation of a number of filling stations, a bulk plant, a blending plant for lubricating oils, and the general sale of gasoline and oil.

Johnson had knowledge of the claim of appellant at least soon after his appointment, but he refused to recognize any claim of lien or right to the proceeds of collection under the contracts, but instructed the accounting department of the companies not to segregate these funds nor to set up an escrow account, but to deposit the collections in the receiver's general bank account. He litigated the question of the validity of these contracts in this court, but at no time did he ever segregate these funds, but continued to appropriate them in carrying on the business of the companies. At no time did he ever take any steps to earmark any funds as being the property of appellant, or to replace the funds out of the general receivership funds, as directed by this court.

The receiver, from the inception of his receivership, lost money in the operation of the business, and continued to lose vast sums of money throughout his receivership. He did not report to the court that he was operating at a loss, nor did he ask the court for instructions, as he manifestly might and should have done. Northern Finance Corp. v. Byrnes, 8 Cir., 5 F.2d 11. His actual operating loss seems to have exceeded the sum of $250,000. He continually increased the liabilities, so that at the end of his stewardship as receiver, the liabilities of the two companies had increased over $275,000. During all this time he was receiving a salary of $1,000 per month, besides large sums on account of personal expenses, and the former president of the companies was, during the entire receivership, on the payroll at a large salary. The exact state of the receiver's account is not a matter of particular importance and we have not attempted to state it with nicety.

His temporary trusteeship terminated February 18, 1935, when his successor was appointed. In the meantime, the court, at the instance of creditors, had ordered an audit of the receiver's activities and an appraisal of the properties. The audit was the first disclosure to the court that the receiver's operation of these companies had resulted in appalling losses and hopeless insolvency. The receiver, with knowledge of the fact that the losses and liabilities were increasing, continued his operations as receiver. He was at no time directed or authorized to appropriate the funds arising from these contracts, yet he did appropriate them in the face of the judgment of this court in Merchants' & Manufacturers' Securities Company v. Johnson, supra, which decision was later expressly approved by the Supreme Court in Manufacturers' Finance Co. v. McKey, 294 U. S. 442, 55 S.Ct. 444, 79 L.Ed. 982. Pending the litigation, with full knowledge of the essential facts and of the claims of the appellant, he appropriated the very subject of the litigation in Merchants' & Manufacturers' Securities Company v. Johnson, supra, and made it impossible to make effective a judgment for appellant in that case. As receiver, he was a ministerial officer representing the court appointing him, and in a sense he was a representative of the creditors and the stockholders of the corporations. It was his duty to preserve the property for disposition in accordance with the orders of the court.

It was the view of the lower court that the receiver was under the mandate of the appointing court to conduct the business of the corporations. But we do not think the order of appointment warrants such a conclusion. That order provides:

"The receiver is authorized and directed forthwith to take possession of, all and singular, said property and assets above mentioned; and is authorized to preserve, manage and maintain the same, and *at his discretion* to continue, until otherwise directed, the operation of all or any part of the business of said defendants and each of them as going concerns, etc."

In the absence of special authority, a receiver has no power to continue to carry on a private business of which he is appointed receiver, so that we must look to the provisions of this order for his authority. The court, in its discretion, may permit a receiver to continue the conduct of a business temporarily, when the interests

of the parties seem to require it, but it is said that the court should move "with great caution in conferring such authority and exposing the property to the hazards of business;" and such action is justified only when clearly necessary for the preservation of the rights of the parties. Where, as here, a receiver is authorized to continue to conduct a business in his discretion, it is clear that the business should not be continued when it can not be conducted except at a loss. First Nat. Bank of Albia v. White Ash Coal Co., 188 Iowa 1227, 176 N.W. 287, 12 A.L.R. 286. When it has been demonstrated by actual experience, as in the instant case, that the business can not be conducted except at the expense of the estate, the receiver, in the exercise of reasonable prudence, is bound, we think, to discontinue operations unless otherwise specifically directed by the appointing court. Wire Wheel Corp. v. Fayette Bank & Trust Co., 7 Cir., 30 F.2d 318; First Nat. Bank of Albia v. White Ash Coal Co., supra; Northern Finance Corp. v. Byrnes, supra; Byrnes v. Missouri National Bank, 8 Cir., 7 F.2d 978; 1 Clark on Receivers, 2nd Edition, Sec. 396. At any rate, he could not with impunity convert, dispose of, or destroy the subject matter of litigation to which he is a party. Clay v. Waters, 8 Cir., 178 F. 385, 21 Ann.Cas. 897; Merrimack River Sav. Bank v. Clay Center, 219 U.S. 527, 31 S. Ct. 295, 55 L.Ed. 320, Ann.Cas.1912A, 513; Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Tillman v. Bungenstock, 185 Mo.App. 66, 171 S.W. 938; Hirning v. Federal Reserve Bank, 8 Cir., 52 F.2d 382, 82 A.L.R. 297. It is certainly not to be contemplated that a receiver, without specific order of court, would not only dissipate the property of the estate, but that he would dispose of or convert property on which there were specific liens and concerning which there was litigation. Southwestern Surety Ins. Co. v. Pacific Coast Casualty Co., 92 Wash. 654, 159 P. 788; People v. Family Fund Society, 31 App.Div. 166, 52 N.Y.S. 867, appeal dismissed, 159 N.Y. 534, 53 N.E. 1129; Central Hanover Bank & Trust Co. v. Herbst, 2 Cir., 93 F.2d 510, 114 A.L.R. 769.

In Southwestern Surety Ins. Co. v. Pacific Coast Casualty Company, supra, the receiver gave bond in a replevin action. The receiver took possession of a launch under this proceeding. One Miller answered in the replevin action, claiming a lien on the property for labor and materi-

al, but pending the trial, the receiver, without any order of court, disposed of the launch for a tract of land. On final judgment, the court held that Miller had a lien. He then proceeded against the receiver's bond given in the replevin action. In the course of the opinion, the court said (page 789):

"The obligation assumed by the Casualty Company was that the receiver should faithfully discharge his duties as receiver. The duties of a receiver are to take charge of, and safely keep and account for, all of the assets of the estate, and to abide all orders of the court with reference thereto. * * *

"The sale of the launch, pending a trial of the replevin action, was clearly a breach of duty on the part of the receiver, and subjects his surety to answer for his default. It was, in law, a conversion of the property."

In People v. Family Fund Society, supra, the receiver, without notice to appellants, applied to the court to be allowed to pay out of the funds a dividend on account of certain uncontested claims presented to him. It was ultimately adjudicated that appellants had a prior claim, but the receiver in the meantime had paid out the funds. On motion to surcharge the receiver, the court, among other things, said (52 N.Y.S. page 869):

"It was said in People v. Security Life Insurance & Annuity Co., 79 N.Y. 267, 271, that a receiver 'is not to advocate the cause of one claimant as against another. Between them he is indifferent, owing a like duty to all, and for that very reason should, as far as possible, see to it that each has an equal opportunity to enforce his claim.' The receiver here violated the duty thus enjoined. Instead of remaining neutral, he espoused the cause of the death claimants against the persistent members, petitioned the court for leave to pay the former, and sedulously avoided giving the latter notice of his application, or an opportunity to be heard thereon."

In the instant case, the receiver deliberately appropriated these funds, either in the interest of general creditors, or in the interest of those who were operating the business at the expense of the estate.

In United States ex rel. v. Howard, 302 U.S. 445, 58 S.Ct. 309, 82 L.Ed. 352, the question presented was the liability of a receiver and trustee in bankruptcy on his official bond for loss resulting from the insolvency of the bank in which the estate's funds were deposited. The bond was conditioned, as here, for the faithful performance of his official duties. After pointing out that no order directed Howard to deposit the funds in this particular bank, but that he was free to select any one or more of the designated depositories, the court said (page 313):

"By designating the Phillip Bank as a depository the court may have justified Howard in assuming that on August 20, 1930, it was a trustworthy place of deposit for bankruptcy funds to the extent of $50,000. But throughout the period of deposit the legal duty to exercise care remained. If at any time he discovered facts tending to show that the place of deposit was no longer safe, it was his duty to bring the facts to the attention of the court."

The receiver, in appropriating and disposing of these funds, thereby put it out of his power to comply with the order of court, which must ultimately have required him to account to the appellant for the funds. The appointing court could not lawfully have directed the receiver to consume, in his operations, funds and property as to which appellant asserted title or lien. Robbins v. Newberg, 9 Cir., 85 F.2d 754; Baltimore Building & Loan Ass'n v. Alderson, 4 Cir., 90 F. 142; MacGregor v. Johnson-Cowdin-Emmerich, 2 Cir., 31 F. 2d 270; Merchants' Loan & Trust Co. v. Chicago Railways Co., 7 Cir., 158 F. 923. What the court could not have lawfully done, could certainly not have been lawfully done by its receiver without authorization.

The lower court was of the view that there may have been presented to the receiver conflicting duties. This was based to some extent at least, upon the erroneous assumption that the receiver was bound to continue operating these companies. It certainly could never have been the receiver's duty to take funds of the appellant and expend them for the benefit of any other claimants, or for the benefit of those carrying on the business of the companies at a loss. In the exercise of ordinary prudence, he would certainly have stopped short of expending these funds to cover the losses in carrying on the business of the companies. Under the undisputed evidence, we are clear that there was a breach of this bond.

It is urged on behalf of the surety that appellant was not entitled to main-

tain this action until or unless it had exhausted the property in the hands of the receiver or had had an accounting. The receiver was charged in the petition with having deliberately converted the property pledged or assigned to plaintiff. It had already been adjudged that the plaintiff had a specific lien upon the property, or the proceeds arising from its conversion. It was therefore not a general creditor, but it is seeking to recover for the conversion of specific property, its right to which had been adjudicated by this court. In any event, the case was not tried in the lower court on the theory now urged by the surety company. The lower court instructed the jury that it need not concern itself with whether or not appellant was entitled to a lien on any part of the assets remaining in the hands of the trustee in bankruptcy, but that if in the meantime the defendant surety company should pay the amount due, then it would be subrogated to the right of the appellant to such lien, if any. We must adhere to the theory on which the case was tried in the lower court. The successful party, absent a cross-appeal, can not ordinarily be heard to urge error in the trial of the action. Bremner v. Hendrickson, 8 Cir., 31 F.2d 893; United States v. Ten Cases, etc., 8 Cir., 49 F.2d 87; Jones Store Co. v. Dean, 8 Cir., 56 F.2d 110.

■ This case illustrates the crying evil of friendly receiverships. In fact, it is a typical case. These corporations, in bad financial condition, sought a friend—a son of the president—to bring suit. The general counsel of the parent company prepared not only the bill of complaint, but all answers and orders and had himself appointed receiver, retaining the president in a lucrative position. There was no apparent reason for believing that a receiver could successfully carry on the business of the companies, and primarily that is not the business of a receiver, nor the function of courts. When those in charge of the business of these corporations could not successfully carry on their business, there would seem to have been no reason for hoping that the same officers, one of whom was named as receiver, could successfully carry it on. From a business standpoint, there is no magic in a receivership. Receivers are

human beings, and judges may or may not have special business capacity. But even if they had a peculiar genius for business, it is unlikely, in view of their other duties, that they could devote the time and attention necessary for so exacting an undertaking.

In the case of Michigan v. Michigan Trust Company, 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136, in an opinion by the late Mr. Justice Cardozo, it is said (page 515):

"This court has had occasion to point out the abuses that can arise from friendly receiverships forestalling the normal process of administration in bankruptcy and enabling a tottering business to continue while creditors are held at bay."

See, also, Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457; Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128.

This describes what happened in this case, and while the creditors were being "held at bay," the corpus of the estate was being consumed by losses and expenses in connection with the conduct of the business by the receiver. To sanction such conduct as proper would go far to destroy all confidence in the administration of estates through federal receiverships. What this receiver did or failed to do, he did as a representative or arm of the court, yet he made no report of his extraordinary doings, nor did he seek any advice of the appointing court. We can not escape the conclusion that he has not faithfully discharged the duties of his office. Having failed therein, the surety became liable to appellant for the damage suffered by it.

Being of the view that the court erred in denying appellant's motion for a directed verdict, it is unnecessary to consider the alleged errors in the court's instructions to the jury.

The judgment appealed from is therefore reversed and the cause remanded with directions to enter judgment in favor of appellant. Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L. Ed. 1636; Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177; Meffert v. Lawson, 315 Mo. 1091, 287 S.W. 610.