Goodrich *et al. vs.* Williams.

---

WILLIAM H. GOODRICH *et al.*, plaintiffs in error, *vs.* GEORGE. W. WILLIAMS, defendant in error.

1. When a promissory note is made in South Carolina, payable on its face at Charleston, to a citizen of South Carolina, it is a South Carolina contract, notwithstanding the maker lives in Georgia, and notwithstanding, at the time of the making of the note, the maker also

executes a mortgage to secure it on goods situated in Georgia, the residence of the mortgagor.

2. A mortgage is not illegally foreclosed because the affidavit of the mortgagee for foreclosure is made before a Notary Public who is also an employee in the office of the attorney at law, employed by the mortgagee to foreclose the same.

3. A mortgage upon a stock of goods then on hand, and upon the additional purchases as they should be made, is a good lien under our law to the amount of the goods on hand at the time, and is good upon future purchases, to that extent, even if those purchases be unpaid for, except as against any legal liens or title that may be against the goods in the hands of a third person.

4. There is no error in the judgment in its finding upon the facts.

Mortgage. Contracts. New trial. Before WILLIAM H. HULL, Esq., Judge *pro hac vice.* Richmond Superior Court. October Term, 1872.

The issues involved in this litigation arose upon a rule against the sheriff of Richmond county, at the instance of Williams, requiring him to show cause why he should not pay over the moneys in his hands arising from the sale of the property of Charles B. Day, to a mortgage execution in favor of said Williams. The answer of the sheriff showed in his hands the net amount of $7,537 42, which was claimed by Goodrich and other creditors. They attacked the mortgage of Williams and the proceedings to foreclose the same, upon the following grounds :

1st. That the note and the mortgage given as security therefor constituted a Georgia contract, and having been foreclosed for the principal and interest, at fifteen per cent., a part of the amount claimed in the execution was not due.

2d. That the affidavit upon which the foreclosure was based, was taken before a clerk or student at law, in the office of the attorney employed to foreclose the mortgage.

3d. That the stock covered by the mortgage had been sold prior to the foreclosure.

4th. That there was not a sufficient stock in the store at the date of the mortgage to cover the indebtedness.

Goodrich being related to Judge Gibson, of the Augusta

Circuit, William H. Hull, Esq., was selected by the parties interested as Judge *pro hac vice*, and to him were submitted all the issues of law and fact.

The evidence made the following case: On May 28th, 1870, at the city of Charleston, in the State of South Carolina, Day made and delivered his note, payable "to the order of George W. Williams, at the office of George W. Williams & Company, Number one, Hayne street, Charleston, South Carolina," one day after the date thereof, for $4,000 00, with interest from date, at the rate of fifteen per cent. per annum, payable monthly. On the same day and at the same place, as security for the payment of said note, he executed the following mortgage:

"STATE OF SOUTH CAROLINA—
  " COUNTY OF CHARLESTON:

*Know all men by these presents*, That I, Charles B. Day, of Augusta, in the county of Richmond, and State of Georgia, for and in consideration of the sum of $4,000 00, to me paid by George W. Williams, of the city of Charleston, in the State and county first aforesaid, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain, sell and deliver, unto the said George W. Williams, all and singular, the goods, wares and merchandise, now in the store in the said city of Augusta, known as number two hundred and sixty-one, Broad street, consisting of a general stock of dry goods, groceries, hardware, cutlery, hats, caps, boots, shoes and divers other articles, too numerous to mention : To have and to hold, all and singular, the said goods, wares and merchandise, to him the said George W. Williams, his executors, administrators and assigns, to his and their sole use forever. And I, the said Charles B. Day, for myself, my executors, and administrators, do covenant to and with the said George W. Williams, his executors, administrators and assigns, that the said goods, wares, and merchandise are free from all encumbrances, and that I will, and my executors and administrators shall, war-

rant and defend the same to the said George W. Williams, his executors, administrators and assigns, against the lawful claims and demands of all persons. Provided, always, nevertheless, that if the said Charles B. Day, his executors or administrators shall well and truly pay unto the said George W. Williams, his executors, administrators and assigns, a certain promissory note, bearing even date with these presents, for $4,000 00, with interest from date, at the rate of fifteen per cent. per annum, payable to the order of the said George W. Williams, one day after date, then the conveyance shall be void, otherwise to remain in full force and effect. And provided, also, that until default by the said Charles B. Day, his executors or administrators, in the performance of the condition aforesaid, it shall and may be lawful for him or them, to keep possession of the said goods, wares and merchandise, using and making sales thereof, from time to time, in the usual course and manner of trade, and replenishing the stock thereof so as to keep it always of about its present value, and sufficient to form an ample security for the payment of the said promissory note. But if the said goods, wares and merchandise shall be taken, seized, levied on or attached, under any process, *mesne* or final, before the payment of the said promissory note, by any other creditor or creditors of the said Charles B. Day, or if the said Charles B. Day, his executors or administrators shall attempt to eloin or remove the said goods, wares and merchandise beyond the limits of said county of Richmond before the full payment of the said promissory note, then, and in either of the said events, it shall and may be lawful for the said George W. Williams, his executors or administrators, or assigns, to take immediate possession of the whole of the said granted property, to his and their own use. And it is also expressly agreed between the said parties to these presents, that the said goods, wares and merchandise, shall be kept insured in solvent and responsible companies for the amount of the said note, at least; and that upon any default herein by the said Charles B. Day, his executors or administrators, the said George W. Williams, his

Goodrich *et al. vs.* Williams.

executors, administrators, or assigns, shall be fully authorized and empowered to take immediate possession of the said goods, wares and merchandise, and the said promissory note shall at once become due and payable.

"In testimony whereof, I have hereunto set my hand, and affixed my seal, at the city of Charleston aforesaid, this twenty-eighth day of May, in the year of our Lord one thousand eight hundred and seventy.

"CHARLIE B. DAY, [SEAL.]"

"Signed, sealed, and delivered, ·

in the presence of

"EDWIN PLATT,

"V. J. TOBIAS, a Commissioner for Georgia."

"STATE OF SOUTH CAROLINA—

"CHARLESTON COUNTY :

"Before me, V. J. Tobias, a commissioner for the State of Georgia, residing in Charleston, South Carolina, personally came the within named Charlie B. Day, to me known to be the individual described in the within deed, and acknowledged to me that he executed and delivered the same for the uses and purposes therein expressed.

"In witness whereof, I have hereunto set my hand and official seal, at Charleston, aforesaid, this twenty-eighth day of May, in the year 1870.

[SEAL.]         "V. J. TOBIAS,

"A Commissioner for Georgia."

"Recorded in Richmond Superior Court, June 1st, 1870, book xx., folios 651, 652 and 653."

The interest was paid on the above described note monthly at fifteen per cent., until April 4th, 1872.

On May 8th, 1872, an affidavit to foreclose the mortgage was made before Henry W. Carr, a Notary Public, and based upon this affidavit, a foreclosure was had, which resulted in the execution now claiming the fund. The judgment of foreclosure and the execution thereon embraced interest at fifteen

per cent. Henry W. Carr, at the time of the foreclosure, was an employee in the office of Joseph P. Carr, the attorney for the mortgagee. His testimony as to his *status* in the office was as follows : First came to J. P. Carr's office to have a place in town where I could come and get my correspondence with Mr. J. W. Spratley, about State agency of a Mobile Life Insurance Company. No stipulation as to compensation. Offered to copy papers gratuitously. Never got any compensation, only in bankruptcy cases, and except in cases of cotton tax, in which J. P. Carr had no interest. In 1872, J. P. Carr proposed to witness to read law, qualify himself for office practice, and go into partnership, which proposition was never accepted. Copied papers and performed clerical duties only when J. P. Carr was pressed. Did not feel bound to stay in the office, but went out whenever had any business. After correspondence with Spratley ceased, made effort to get into other business. Accepted position of local agent of Phœnix Life Insurance Company ; resigned it after about a week. Afterwards applied to Major Jackson for position on Port Royal Railroad. Afterwards discussed various schemes for other business, among others, with Mr. Hope for a position on canal. In August, 1872, left the office of J. P. Carr. Copied papers, prepared bankruptcy papers, went to clerk's office, sometimes made deposits.

Attended at office every day in his absence; told clients he was absent or sick as the case might be. Did not attend at levy of execution. Carried papers sometimes to Judge. Carried this foreclosure to clerk, and perhaps gave instructions to sheriff, at request of J. P. Carr. Took mail out in his absence ;. had no authority to open letters. Never received pay as Notary Public; did not in this instance. Brother of J. P. Carr. Had a key to his office.

At the date of the mortgage, the stock was of the value of $7,019 00 ; at the date of the levy of the mortgage *fi. fa.*, of the value of $14,621 83, of which, goods to the amount of $7,500 00 were unpaid for. Very few of the goods on hand at the date of the mortgage were in the store at the time of

the levy. The stock was continually being changed by sales and purchases. The fund in Court arose from the sale of this stock.

The Court held as follows: "I hold the mortgage of Williams to be a good lien under the laws of Georgia.

"The goods were here, and this was the domicil of the owner. It is, therefore, to be governed by the law of this State: See Fishburn *vs.* Kunhardt, 2 Spears, 556. Same doctrine recognized *obiter* in Oakes *vs.* Bennett, 11 Howard, 45.

" But the note was a South Carolina contract, and bears interest by the law of that State, notwithstanding it was secured by a Georgia lien: See Wolf *vs.* Johnson, 10 Wheaton, 367.

"The foreclosure I hold good. The taking an affidavit to foreclose is a purely ministerial act. I see no element of the judicial function in it. And although our Code forbids the attorney to take the affidavit himself, it does not extend to one employed in the attorney's office. If, indeed, a case of an affidavit taken by a mere servant and agent of the attorney were shown, it might be considered as taken by himself; but the evidence in this case does not, in my opinion, show such a state of facts. Moreover, the lien of a mortgage does not depend on its foreclosure, and if this foreclosure were held bad, equity would hold up the fund until a proper foreclosure could be had. And in rules to distribute money, the Court administers on equitable principles. But the lien of the mortgage only extends to the amount or value of the stock at the time it was given. So our Supreme Court holds in the case of Chisholm *vs.* Muse.

" I find from the evidence that the stock mortgaged
was worth .................................... .........$ 7,019 00
" The stock levied on worth........................... 14,622 00
" The amount in sheriff's hands, after paying expenses and paramount claims, is................ 7,537 42

" If I make any error in these figures, I reserve the power to correct them on being informed of it.

" My judgment, therefore, is, that George W. Williams receive of the amount in the hands of the sheriff, the proportion which $7,019 00 bears to $14,622 00, which, if I calculate correctly, is $3,664 57.

"The remainder will be paid to the other claims, according to priority."

To this judgment Goodrich and other creditors excepted.

FRANK H. MILLER ; BARNES & CUMMING, for plaintiffs in error.

1st. If an attorney at law of the party cannot issue an attachment as Notary, or take the probate of a mortgage, 37 Georgia, 681, Act March 8, 1869 ; Code 443, 193, 46 *Ibid.,* 253, his clerk cannot : Code, 3827, 5 *Ibid.,* 325, 424 ; especially where he is the attorney's brother : 46 *Ibid.,* 621.

2d. A money rule is an equitable proceeding : 24 Georgia, 150 ; 8 *Ibid.,* 196; 7 *Ibid.,* 52 ; 4 *Ibid.,* 170 ; and any person claiming an interest may tender an issue : 7 *Ibid.,* 52, 56 ; 17 *Ibid.,* 521 ; 24 *Ibid.,* 146 ; 20 *Ibid.,* 668.

The Court cannot compel all creditors to unite, but if any creditor moves the rule, and the others are notified, the same is sufficient, and the judgment will bind all : 20 Georgia, 668 ; or all may unite in the same rule : 17 *Ibid.,* 522.

3d. In enforcing the payment of a debt in Georgia, the laws of this State govern as to the remedy and effect : 37 Georgia, 428 ; 35 *Ibid.,* 176 ; 6 Am. Rep., 268.

A mortgage made to avoid the Georgia law as to usury, is void : Code, 2025. If not void, the mortgage is a Georgia contract, certainly void as to the usurious interest : 4 Kelly, 1 ; 2 Speers, 556.

4th. Personal property is presumed to follow the person ; this mortgage then, if not void under the law of Georgia, was not such a contract as the law of the place where made would govern : 30 Georgia, 440.

5th. It appears that of the stock levied on, $7,500 00 was unpaid for ; therefore, this amount of stock was neither on hand at the date of Williams' mortgage, nor paid for with the

proceeds arising from the sale of goods then on hand. Williams therefore cannot, certainly as against Day, recover more than what $7,122 00 worth of goods brought—but there are other creditors who, in the *interim*, have acquired liens, which attach to the goods on hand at the dates thereof. It must, therefore, appear that the goods then on hand were the same mortgaged to Williams, or they take precedence : Anderson *vs.* Howard & Sons, decided August 12, 1873.

6th. The usury laws of Georgia apply to the contract, unless proof is made that there was no usury in South Carolina, which was not done : 6 Am. Rep., 268. The Court may proceed on its knowledge of the laws of South Carolina, but if it appears that the parties had in view another place, the laws of that place will be preferred : 12 Georgia, 582.

JOSEPH P. CARR, by RICHARD H. CLARK, for defendant.

1st. Loans at a place bear interest of that place unless payable elsewhere: Story's Conflict of Laws, section 291; cites Wolf *vs.* Johnson, 10 Wheaton, 367, 383.

2d. No difference if secured by mortgage on goods in a place where interest is lower : Story's Conflict of Laws, section 293, cites 2d Atkins, 382; 3 *Ibid.*, 727; 10 Wheaton, 367.

3d. If no place is named for payment, bound by domicil of creditor: Story's Conflict of Laws, 295.

4th. Remedy according to *lex fari:* Story's Conflict of Laws, 558; 2d Speers, 556; 11th Howard, 45.

5th. As to amount of goods mortgaged on a varying stock: Chisolm *vs.* Chittenden & Company, 45 Ga., 213.

6th. How mortgages on personalty are to be foreclosed: Irwin's Code, 3895.

7th. Attorneys cannot take affidavit, (Code, 443,) but the attorney here did not, neither is it proven that Notary was his clerk. If doubtful, judgment of presiding Judge conclusive, because it was a question of fact submitted to him and there is sufficient evidence to support judgment.

McCay, Judge.

1. Whilst we think it not of much importance, (in view of the fact that even under our law the mortgage debt was good for more than the Judge gave it,) yet we are clear that this was a South Carolina contract—that is, the debt was. It was entered into in Carolina, it was by its terms made payable at Charleston, South Carolina. Nor does the fact that it was secured by a mortgage on goods in Georgia change the rule: Story on Con. Laws, 290, 293; 10th Wheaton, 367. It was said in argument that the going to Charleston and making the contract there, and specially providing in the note that it was to be paid in Charleston, was a fraud upon the laws of Georgia—a device to escape the effect of our law then in force against usury; but we see nothing in this. When Mr. Williams was applied to for the loan of money, he had a right to stipulate that the contract should be made according to the laws of South Carolina, the place of his residence, the place where he was doing business. He had a right to say the contract shall be made in South Carolina, and should be performed there. Had he, in reply to a letter of the borrower asking the loan, said, in terms, I live in South Carolina, I will lend you the money but you must come here for it, the note shall be made here and performed here, and its validity be determined by the laws of South Carolina, he would have only been doing what he had a right to do.

2. We will not extend the prohibition of section 408 of the Code of 1873, beyond its term, especially in reference to a mere ministerial act, such as an affidavit to foreclose. The Notary here does not appear to have been a clerk—a servant of the attorney. The relation which in fact existed between him and Mr. Carr does not bring him within the reason of the rule, even if it were to be extended to a servant. We agree also with the presiding Judge that as the mortgage was duly recorded, the question was not very material whether it was foreclosed or not. The money was in Court by consent, for distribution, and the mortgage was entitled to it by reason of

its date and record, and by reason of its being a lien on the goods.

3. We have decided in *Chisholm vs. Chittenden & Company*, 45 *Georgia*, 213, that a mortgage may, under our Code of 1873, section 1954, cover a stock of goods as it changes by purchases and sales, but that it can only cover an amount equal to what was on hand at the time. We adhere to that ruling. The permission to give such a mortgage, though a very convenient privilege, is one very easily used to commit fraud, and we think the spirit of the Code as well as public policy requires it to be limited as we have limited it. We have know of several cases where mortgages of this character have been given, with a small stock at the time, and large purchases made on credit soon afterwards. The temptation to do this, if possible, would lead to fraud, and we think the object of the law is best attained by keeping the parties within the amount of stock on hand at the time. But the goods when purchased, if there be no fraud, and be delivered, belong to the purchaser and fall within the lien, though they be not paid for. The seller has no lien on them or title to them, and by the express words of the Code they fall into the lien of the mortgage. As a matter of course, if the goods brought into the stock were stolen goods, or goods with some other lien on them, or other good title in them of a third person, the mortgage could not cover them.

4. Altogether, we see no error in the judgment. The mortgage was entitled to be paid in proportion to the amount of goods it was a lien upon. It furnished that much to make the fund, and we think the division made was right. The goods sold were of the value of $14,622 00. The mortgage was a lien upon $7,019 00, of that stock, and it was entitled to such a proportion of the fund in hand as $7,019 00 bears to the stock seized and sold, to-wit: $3,664 00, or about that sum.

Judgment affirmed.