SEEMAN ET AL. *v.* PHILADELPHIA WAREHOUSE COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 198. Argued March 8, 1927.—Decided May 16, 1927.

1. A corporation engaged in lending money or credit, may legitimately stipulate for repayment in the State in which it is organized and conducts its business, in accordance with its laws and at the interest rate there allowable, even though the agreement for the loan was entered into in another State where a different law and a lower rate of interest prevail. P. 407.

2. The *bona fides* of a written agreement between the parties to a loan for repayment in the State of the lender is not impeached, nor a waiver established, by proof of other instances in which the repayments under similar agreements between them were made in the borrower's State where the legal interest rate was lower. P. 409.

7 Fed. (2d) 999, affirmed.

CERTIORARI (269 U. S. 543) to a judgment of the Circuit Court of Appeals which reversed a judgment of the District Court recovered by Seeman et al. in an action against the Warehouse Company for conversion of pledged goods.

*Mr. Samuel F. Frank,* with whom *Messrs. Harry J. Leffert, William N. Cohen,* and *Arthur W. Weil* were on the brief, for petitioners.

*Mr. Owen J. Roberts,* with whom *Mr. Charles A. Riegelman* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the court.

Respondent brought suit in the district court for Southern New York to recover for the conversion of a quantity of canned salmon pledged to it as security for a loan. The pledgor, who had fraudulently regained possession, sold the salmon to petitioners. The defense set up was that the transaction between respondent and the pledgor was usurious and therefore void under the law of New York, where the pledgor conducted its business and where petitioners contend the pledge agreement was made.

The trial court charged the jury that the New York law was applicable. The jury returned a verdict for petitioners. The judgment on the verdict was reversed by the court of appeals for the second circuit. 7 Fed. (2d) 999. This Court granted certiorari. 269 U. S. 543.

Respondent is a Pennsylvania corporation having its only office or place of business in Philadelphia. It has an established credit and for many years has engaged in a business which is carried on according to the routine followed in the present case, which respondent contends, results in loans of credit and not of money. To applicants in need of funds it delivers its promissory note, payable to its own order and then endorsed. The applicant in exchange gives the required security—here ware-

house receipts for the salmon—and a pledge agreement by which he undertakes to pay the amount of the note at maturity to respondent at its office in Philadelphia, and agrees that the collateral pledged shall be security for all obligations present and prospective.  At the same time the applicant pays to respondent a "commission" for its "services" and for the "advance of its credit" computed at the rate of 3 per cent. per annum on the face of the note.  He is then free to discount the note and to use the proceeds.  In practice, as in the present case, respondent usually, with the consent of the borrower, delivers the note to its own note broker in Philadelphia, receives from him the proceeds of the note less discount and brokerage, and pays or forwards the amount so received to the borrower.  At maturity he must pay the face value of the note to respondent or, as was the case here, renew the note by paying a new commission and the amount of the discount on the matured note.  On each transaction the applicant thus pays, in addition to the amount of the proceeds of the note, the commission and the discount.  Respondent, after taking up its note, retains the commission alone as the net compensation for its part in the transaction.  In addition, the applicant may, as was the case here, pay the fees of the note broker and the fee or compensation of a loan broker, acting as intermediary in securing the accommodation by respondent, a total amount far exceeding 6 per cent., the legal rate of interest in New York.  The commission and discount paid here varied from 8½ to 10½ per cent. per annum of the face amount of the notes, taking no account of fees paid to brokers.

In Pennsylvania, the exaction of interest on loans of money in excess of 6 per cent., the lawful rate, does not invalidate the entire transaction, but excess interest may be recovered by the borrower.  Penn. Stat. 1920, §§ 12491, 12492; *Montague* v. *McDowell*, 99 Pa. St. 265, 269; *Stay-*

*ton* v. *Riddle*, 114 Pa. St. 464, 469; *Marr* v. *Marr*, 110 Pa. St. 60. The business carried on by respondent as described, was considered and upheld by the Supreme Court of Pennsylvania as not usurious in *Righter, Cowgill & Co.* v. *Philadelphia Warehouse Co.*, 99 Pa. St. 289.

To avoid the application of the Pennsylvania law to the present transaction and others for which the salmon was held as security, and to bring them within the prohibition of the New York law, petitioners at the trial relied on evidence that preliminary negotiations were had in New York City between the pledgor and the agent of respondent from which it might be inferred that the agreement was in fact made there, although the formal documents were dated at Philadelphia and respondent actually executed its note and delivered it to the note broker there. Petitioners also relied on the special circumstances of the case, particularly the fact that respondent itself procured the proceeds of the note in Philadelphia and forwarded them to the borrower in New York, as ground for the inference by the jury that the real transaction was a loan of money thinly disguised as a loan or sale of credit. As the total amount paid to respondent included both the discount and the commission, aggregating more than the legal rate of interest, it is insisted that these charges, if for a loan of money, were usurious, even though respondent retained only the commission after satisfying the demands of the discounting banks.

The court below held that there was no evidence that the transaction was other than that of its form, a loan of credit; that the agreement between the lender and the borrower was completed only when the respondent delivered its note to the broker in Philadelphia and that the agreement must therefore be regarded as a Pennsylvania contract valid under the law of that state; and that in

any case, as Philadelphia, by the express terms of the contract, was made the place of payment by the borrower, the legality of the transaction must be determined by the law of Pennsylvania and not of New York.

But in the view we take, we think it immaterial whether the contract was entered into in New York or Pennsylvania, and it may be assumed for the purposes of our decision that the jury might have found that in fact the parties stipulated for a loan of money rather than of credit.[1] Respondent, a Pennsylvania corporation having its place of business in Philadelphia, could legitimately lend funds outside the state and stipulate for repayment in Pennsylvania in accordance with its laws and at the rate of interest there lawful, even though the agreement for the loan were entered into in another state where a different law and a different rate of interest prevailed. In the federal courts, as was said in *Andrews* v. *Pond,* 13 Pet. 65, 77–78, " The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the laws of the place of performance, is higher than that permitted at the place of contract, the parties may stipulate for the higher interest, without incurring the penalties of usury." *Miller* v. *Tiffany,* 1 Wall. 298; *Bedford* v. *Eastern Building & Loan Association,* 181 U. S. 227, 242, 243; see *Junction R. R.* v. *Ban of Ashland,* 12 Wall. 226, 229; *Peyton* v. *Heinekin,* 131 U. S. Appendix, ci; cf. *Cromwell* v. *County of Sac.,* 96 U. S. 51, 52.

In support of a policy of upholding contractual obligations assumed in good faith, this Court has adopted the

---

[1] See *Forgotston* v. *McKeon,* 14 App. Div. (N. Y.) 342; *Gilbert* v. *Warren,* 56 App. Div. 289; *In re Samuel Wildes' Sons,* 133 Fed. 562; *Dry Dock Bank* v. *American Life Ins. & Trust Co.,* 3 N. Y. 344; *Williams* v. *Fowler,* 22 How. Prac. 4.

converse of the rule quoted from *Andrews* v. *Pond, supra.*
" If the rate of interest be higher at the place of contract
than at the place of performance, the parties may law-
fully contract in that case also for the higher rate." See
*Miller* v. *Tiffany, supra,* 310; *Junction R. R.* v. *Bank of
Ashland, supra,* 229; *Cromwell* v. *County of Sac., supra,*
62; *Wharton, Conflict of Laws,* § 510 h; cf. *Tilden* v.
*Blair,* 21 Wall. 241; and see *Cockle* v. *Flack,* 93 U. S. 344,
347.

A qualification of these rules, as sometimes stated, is
that the parties must act in good faith, and that the form
of the transaction must not "disguise its real character."
See *Miller* v. *Tiffany, supra,* 310. As thus stated, the
qualification, if taken too literally, would destroy the rules
themselves for they obviously are to be invoked only to
save the contract from the operation of the usury laws
of the one jurisdiction or the other. The effect of the
qualification is merely to prevent the evasion or avoidance
at will of the usury law otherwise applicable, by the par-
ties' entering into the contract or stipulating for its per-
formance at a place which has no normal relation to the
transaction and to whose law they would not otherwise
be subject. Wharton, in his Conflict of Laws, § 510 o, in
discussing this qualification, says: "Assuming that their
real, *bona fide* intention was to fix the situs of the con-
tract at a certain place which has a natural and vital
connection with the transaction, the fact that they were
actuated in so doing by an intention to obtain a higher
rate of interest than is allowable by the situs of some of
the other elements of the transaction does not prevent
the application of the law allowing the higher rate." See
*Van Vleet* v. *Sledge,* 45 Fed. 743, 752; *Goodrich* v. *Wil-
liams,* 50 Ga. 425, 435; *U. S. Savings & Loan Co.* v. *Har-
ris,* 113 Fed. 27, 32.

Here respondent, organized and conducting its business
in Pennsylvania, was subject to laws of that state and

had a legitimate interest in seeking their benefit. The loan contract which stipulated for repayment there and which thus chose that law as governing its validity cannot be condemned as an evasion of the law of New York which might otherwise be deemed applicable.

Petitioners rely upon the fact that in some instances, in connection with other transactions between respondent and the pledgor, payments on account of amounts due were made by deposits in respondent's account in a New York bank, although the other payments were made in Philadelphia. But we do not think this circumstance standing alone is sufficient to vary the application of the rule. There is no suggestion to be found in the record that in the negotiations preliminary to the signing of the contract or at any other time there was any agreement by the parties that payment should be made other than in accordance with the tenor of the written agreement. The pledgor never did pay the amount of the note involved in the present transaction. It was three times renewed and on each renewal the discount on the maturing note and the commission on the renewal were either paid by the pledgor by check in Philadelphia or deducted there by his authority from the proceeds of the renewal note. The fact that in some instances wholly unexplained such payments were received elsewhere affords no basis for the contention that the written stipulation for payment in Philadelphia was not the real one or that its obligation was waived. If the creditor might have compelled payment in the federal courts in New York, see *Bedford* v. *Eastern Building & Loan Association, supra,* he could receive payment there of a part of the debt without forfeiting the balance.

*Judgment affirmed.*