In re DUTCH WOODCRAFT SHOPS.

No. 6251.

District Court, W. D. Michigan, S. D.

Nov. 19, 1935.

Jarrett N. Clark, of Zeeland, Mich., for debtor.

Butterfield, Keeney & Amberg, of Grand Rapids, Mich., for excepting creditor, Fine Arts Corporation.

RAYMOND, District Judge.

A number of exceptions have been filed by Fine Arts Corporation, a creditor, to

the report of the special master which recommends confirmation of debtor's amended plan of reorganization submitted in proceedings under section 77B, Bankr.Act (11 U.S.C.A. § 207). The objecting creditor has a claim of $7,000 out of a total of approximately $520,000 of claims allowed against debtor.

Among other exceptions, objection is made to the finding that debtor's amended plan of reorganization is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible, the complaint being that the plan provides for the equivalent of a private sale of debtor's assets to stockholders for an amount which is wholly inadequate. Careful examination of the record is convincing that this exception must be sustained. Because of the view taken by the court upon this exception, comment upon the remaining exceptions is unnecessary.

■ Without doubt, in a case like the present, where the proposed plan of reorganization of a grossly insolvent corporation contemplates reinvestment of the title to the assets in the former stockholders, by purchase or otherwise, those who seek approval of the plan over objection of a dissenting creditor are constrained by a very substantial burden to establish strict observance of the equities necessarily precedent to such result.

■ A misconception of the fundamental purposes of the section here invoked appears in the record of proceedings before the special master. Early in these proceedings, counsel for the debtor announced the view that the essential purpose of section 77B is to allow the debtor corporation to work out a plan so that creditors will receive approximately what they would obtain in bankruptcy proceedings and still allow the company to continue to function. This view cannot be sustained. With outstanding capital stock of $15,000 and assets appraised at about $53,000, the indebtedness of the company is substantially in excess of a half million dollars. Obviously, the essential purpose of section 77B is to preserve and continue a going business, but in cases where going concern values have been wholly or practically eliminated, the case is one for liquidation rather than reorganization. The preservation of business enterprises must not be at the expense of creditors, and the provisions of section 77B should not be taken advantage of to effect what, in fact, amounts to a composition under section 12 (11 U.S.C.A. § 30). The words "in good faith" as used in the act imply an honesty of purpose to save the company and its creditors, particularly its creditors, and to avoid the evils of liquidation which is often effected with the result that creditors receive practically nothing. The good faith which must be made to appear at the inception of proceedings under 77B must continue throughout, and, in the case of insolvent corporations, the rights of creditors are to be guarded and must be recognized as paramount to those of stockholders.

■ Confirmation of the plan to revest the stockholders with title to the property of debtor would be justified only upon clear proof of fairness to creditors. Here the appraisal evidently was made on the basis of values which would be realized at a forced sale. Creditors may not be thus dealt with. In determination of the value of their claims, they are entitled to have recognized not only present liquidation values but also the prospective values of debtor's assets as a going concern. It is not fair that stockholders, the value of whose rights has been completely obliterated, shall appropriate to themselves the going concern value of a debtor corporation seeking reorganization under section 77B, at the same time disregarding the rights of creditors to share in the prospective values.

Prior to the enactment of section 77B, similar plans of reorganization were held to be fraudulent conveyances as against dissenting minority interests. The case of Northern Pac. R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, held that even in the absence of fraud, any device, whether by private contract or judicial sale, whereby stockholders are preferred to creditors is invalid. In that case it was said, 228 U.S. 482, at pages 504, 508, 33 S.Ct. 554, 560, 57 L.Ed. 931:

"For, if purposely or unintentionally a single creditor was not paid, or provided for in the reorganization, he could assert his superior rights against the subordinate interests of the old stockholders in the property transferred to the new company. They were in the position of insolvent debtors who could not reserve an interest as against creditors. Their original contribution to the capital stock was subject to the payment of debts. The property was a trust fund charged primarily with

the payment of corporate liabilities. Any device, whether by private contract or judicial sale under consent decree, whereby stockholders were preferred before the creditor, was invalid. Being bound for the debts, the purchase of their property by their new company for their benefit, put the stockholders in the position of a mortgagor buying at his own sale. If they did so in good faith and in ignorance of Boyd's claim, they were none the less bound to recognize his ·superior right in the property, when, years later, his contingent claim was liquidated and established. That such a sale would be void, even in the absence of fraud in the decree, appears from ·the reasoning in Louisville Trust Co. v. Louisville Ry. Co., 174 U.S. 674, 683, 684, 19 S.Ct. 827, 43 L.Ed. 1130, 1134, where, 'assuming that foreclosure proceedings may be carried on to some extent, at least, in the interests and for the benefit of both mortgagee and mortgagor (that is, bondholder and stockholder),' the court said that 'no such proceedings can be rightfully carried to consummation which recognize and preserve any interest in the stockholders without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation. * * * Any arrangement of the parties by which the ·subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.' * * *

"If the value of the road justified the issuance of stock in exchange for old shares, the creditors were entitled to the benefit of that value, whether it was present or prospective, for dividends or only for purposes of control. In either event it was a right of property out of which the creditors were entitled to be paid before the stockholders could retain it for any purpose whatever."

The case of First National Bank of Cincinnati v. Flershem, 290 U.S. 504, 54 S.Ct. 298, 78 L.Ed. 465, 90 A.L.R. 391, held void an order of sale of assets fixing an upset price based on "scrap" value, where the result was to effect the transfer of all the corporate property to the new corporation and to relieve both the old and the new corporation from the payment of the former's debts. The court said, 290 U.S. 504, at page 525, 526, 54 S.Ct. 298, 306, 78 L.Ed. 465, 90 A.L.R. 391:

"In justifying the action taken, the Court of Appeals called attention to the fact that the nonassenting creditors had not introduced any evidence to prove their contention that the sale should not be confirmed. In view of the undisputed facts stated above, the introduction of such evidence was not indispensable. The failure to secure an adequate price seems to have been due, not to lack of opposing evidence, but to the mistaken belief that it was the duty of the court to aid in effectuating the plan of reorganization, since a very large majority of the debenture holders had assented to it. * * * It would be unreasonable to impose upon a few dissenting creditors the heavy financial burden of making an adequate appraisal supported by the testimony of competent experts, where, as here, the assets include extensive plants and equipment located in nine states."

■ While the principles announced in the cases quoted arise from those applicable to fraudulent conveyances, the approval of proposed plans under section 77B must satisfy the more exacting requirements of that section and must be based upon findings of equity, fairness, and feasibility. The Boyd Case emphasizes the principle that any plan of reorganization which provides for the participation of stockholders without making adequate provision for preservation of the rights of all unsecured creditors is an unfair plan. It has been said that a plan of reorganization must meet two requirements—it should give to each creditor and stockholder the value of his interest in the debtor's assets and it should fully recognize the priority of claims. The omission of any group, while a lower ranking group,. either of stockholders or creditors, is included, will · render the plan unfair and inequitable.

■ Here it is noted that one of the two appraisers who fixed the total value of the assets in this case at the sum of $52,-915.50 as compared with the total value disclosed by the petition for reorganization of approximately $143,000, was an office employee of the debtor. The results sought in this case could be sustained only after an appraisal made by appraisers thoroughly competent and wholly disinterested and one which takes into consideration not only present but prospective values. No such appraisal was attempted. The valuation of assets which forms the sole basis for approval of the consideration to be

paid by stockholders for the assets of debtor finds no sufficient support in the record.

The otherwise favorable inferences which might be drawn from the fact that the proposed plan has been approved by the requisite amount of creditors lose weight because of the fact that a very large majority of those creditors are directly or indirectly interested as stockholders and would share as such in the prospective values if the plan were confirmed.

Circumstances may exist where the success of an undertaking requires that new money be furnished and where the former stockholders are the only or most feasible source of the new capital. In such instances, the court may recognize as fair and equitable a plan which includes contributions of new money by stockholders, provided it satisfactorily appears that full recognition has been given to the value of creditors' claims against the property. But where the business is to be continued as a going concern, this value may not be based solely upon the amount which could be obtained for the assets at forced sale. The assets should be shown by clear and convincing evidence to have been purchased at a fair valuation and in good faith, and the burden of so proving rests upon the stockholders. For the reason that the record in the present case fails to sustain this burden, the report of the master cannot be confirmed.

An order may be entered remanding the cause to the special master for further proceedings in conformity with this opinion.