**MEINHARD, GREEFF & CO., Inc. v.
EDENS et al.**

No. 6243.

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1951.

Decided June 6, 1951.

794

Alphonse A. Laporte, New York City (Clarke W. McCants, Jr., Columbia, S. C., on brief), for appellant and cross-appellee.

Henry Hammer, Columbia, S. C., for appellees and cross-appellants.

Waring & Brockinton, Charleston, S. C., Dwight, Royall, Harris, Koegel & Caskey, White & Case, Sperry, Weinberg & Ruskay, Hahn & Golin, and Dills, Muecke & Schelker, all of New York City, on brief of certain factoring organizations as amici curiae.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are cross appeals in the reorganization proceedings under Chapter X of the Bankruptcy Act 11 U.S.C.A. § 501 et seq., of the Carolina Mills, Inc., a cotton textile manufacturing corporation. The order appealed from allowed a claim filed by Meinhard, Greeff & Company, a textile factor, for advancements in the sum of $62,886.28 and held that of this amount the sum of $14,031.20 was secured by cotton yarn in process of manufacture upon which claimant held a lien and which was sold by the trustees of debtor after they had completed the manufacturing process under order of court. Claimant has appealed from the order, contending that the claim should have been held secured in the amount of $46,147.66, the amount for which the yarn was sold less the amount properly attributable to completing the process of manufacture. The trustees appeal from the allowance of the claim and the disallowance of a counterclaim based on the alleged charging of usurious interest by the claimant. Their objection to the claim is based not only on the alleged charging of usurious interest but also on objections to the evidence by which the claim was proven and the alleged acquirement of a preference in violation of the provisions of the Bankruptcy Act.

■ The questions raised by the appeal of the trustees are fully covered by the report of the referee and the decision of the District Judge and are so manifestly lacking in merit as to justify only the briefest discussion here. As to usury, we think it perfectly clear that the contract under which the alleged usurious payments were made, was a contract made in New York to be performed in that state by corporations which had their principal offices and places of business there, that the payments complained of were made there and that the contract provided that it should be governed by New York law. Under such circumstances it is clearly the law of New York that is applicable. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123; Merchants' and Mfgs.' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940, 943; Le Sueur v. Mfgs.' Finance Co., 6 Cir., 285 F. 490, 496. Sec-

tion 7773 of the South Carolina Code[1] manifestly has no application, as the claimant was not licensed to do business in South Carolina and was not doing business in that state. It is conceded that the plea of usury is not good under the law of New York, see Union Estates Co. v. Adlon Const. Co., 221 N.Y. 183, 186, 116 N.E. 984, 985, 12 A.L.R. 363 and we think it clear that, even under the law of South Carolina, no case of charging or collecting usury is established. The finding of the referee as to the facts, which was affirmed by the District Judge and is sustained by the evidence, is as follows: "I have to the best of my ability, carefully gone through the monthly accounts, and the photographic copies of the ledger submitted commencing in October 1946 and continuing November 11, 1948 and I find from October 1946 through November 11, 1948 that while at the end of each month the interest was added to the indebtedness, this was at once wiped out by credits upon the ledger, the credits in all cases far exceeding the amount of the interest charged. When a payment is made upon an instrument or other indebtedness upon which both principal and interest are owing, it is presumed that the interest is first paid to date and the balance then applied upon the principal. By amended claim the claimant has waived all interest and factorage charges subsequent to Petition in Bankruptcy, but even before this was done the credits exceeded the interest charges through February 1949 and after that no interest was collected. From the foregoing I find that no usurious interest charges or collections have been proved."

The objection to the testimony as establishing the claim was that ledger sheets instead of journal entries were introduced to establish the account between the parties. The flimsiness of this objection becomes evident in the light of the fact that monthly statements based on these ledger entries were sent to the debtor and no question was raised as to their correctness, thus creating an "account stated" between the parties. See Wiggins v. Burkham, 10 Wall. 129, 19 L.Ed. 884; McBride v. Watts, 1 McCord, S.C., 384; McDow v. Brown, 2 S.C. 95, 113; Rudolph Wurlitzer Co. v. Dickinson, 153 Ill.App. 36, 40, affirmed 247 Ill. 27, 93 N.E. 132.

The claim of preference relates to the taking of additional collateral on August 13, 1948 by perfecting on that date a lien on cotton yarn of a value of $92,000. The referee found, however, that the insolvency of debtor had not been established as of that date; that claimant advanced to debtor $42,000 on August 12, $10,500 on August 13, $39,000 on August 18, $42,000 on August 23 and $28,900 on August 30; and that the indebtedness of debtor to claimant increased from $113,134.30 to $229,629.56 during the month of August. In the light of these figures it is little short of absurd to contend that the taking of collateral valued at only $92,000 on August 13 constituted a preferential transfer.

We come then to the appeal of the claimant, the facts with respect to which are as follows: The debtor owed the claimant at the time of the filing of the petition under Chapter X the sum of $83,143.47 for advancements, an amount reduced by subsequent collections to $62,886.28. This was secured by a lien, properly determined by the lower court to have been duly perfected under the South Carolina Factor's Lien

---

1. That section is as follows: "7773. Condition precedent to doing business in this State.—It shall be a further condition precedent to the right of any such corporation (foreign corporation) to do business in this State, that it shall be taken and deemed to be the fact irrebuttable, and part and parcel of all contracts entered into between such corporation and a citizen or corporation of this State, that the taking or receiving, from any citizen or corporation of this State, of any charge, fee, payment, toll, impost, premium or other moneyed or valuable consideration, under or in performance of any such contract, or of any condition of the same, shall constitute the doing of its corporate business within this State, and that the place of the making and of performance of such contract shall be deemed and held to be within this State, anything contained in such contract or any rules or by-laws of such corporation to the contrary notwithstanding."

Statute (Art. 3–B secs. 8785 to 8785–8 of the Civil Code of South Carolina) upon the merchandise and accounts receivable of debtor including all cotton and cotton yarn in process of manufacture. At the time of the filing of the petition, there were in process of manufacture in debtor's mills, and subject to this factor's lien, 80,741 pounds of yarn, upon which debtor had expended up to that time a total of $46,891.77. The manufacturing process was completed by the trustees under direction of the court and the finished product was sold by the trustees for $71,254.65. The expense properly attributable to the finishing of the yarn was $25,106.99, leaving the sum of $46,-147.66 which we think was properly subject to the lien of claimant, as this was the amount of the proceeds of the sale of the yarn upon which claimant held a lien less the expense incurred by the trustees in putting it in salable condition.

 The referee arrived at the sum of $14,031.20 by assuming that the cotton yarn in process of manufacture had no more value than waste, because it would have been waste if torn from the machinery at that stage of manufacture. After deducting from the selling price certain expenses totaling $43,192.66, which included items based upon depreciation due to allowing the mills to stand idle and the expense of starting them up thereafter, he divided the remainder between claimant and the trustees on a theory which in effect was that this was profit derived from operation of a joint enterprise. We think that this theory was wrong. The cotton yarn in process was not waste but yarn to which value had already been added by the manufacturing process to which it had been subjected. In completing the process of manufacture, the trustees were not engaging in any joint enterprise with claimant, but were operating the mills under the direction of the court for the benefit of all persons who had an interest in the property including those who held liens thereon. When they finished the manufacture of yarn in process upon which claimant had a lien, they were entitled to charge against the proceeds derived therefrom the expenses properly allocable to that operation, and not

general expenses of the trusteeship not so allocable. See Virginia Securities Corporation v. Patrick Orchards, 4 Cir., 20 F.2d 78; Tawney v. Clemson, 4 Cir., 81 F.2d 300; Byrer v. Bushong, 4 Cir., 108 F.2d 594, 596; Reconstruction Finance Corp. v. Cohen, 10 Cir., 179 F.2d 773; Miners Sav. Bank of Pittston, Pa. v. Joyce, 3 Cir., 97 F.2d 973, 977.

 We find no justification in the record for treating the yarn in process as waste. Not only had the value of the cotton been increased by the work which had been done upon it, but claimant upon intervening in the court proceeding had been assured that its security in the yarn in process would be protected. It was unquestionably proper for the court to authorize the trustees to start up the mills of debtor and thus maintain the value of the enterprise as a going concern. Reconstruction Finance Corp. v. Kaplan, 1 Cir., 185 F.2d 791. And it was advantageous for the operation to go forward with the yarn which was then on the machines and which was subject to the lien of the claimant. To have required that it be stripped from the machines would not only have destroyed its value but, as the evidence shows, would have resulted in a less profitable operation of the machinery so far as the trustees were concerned. When they took over the property of debtor, including yarn in process, they took it cum onere, subject to the liens upon it and the equities arising out of contracts affecting it; and not only was the yarn in process subject to the lien of claimant but it was also subject to the equity arising out of the implied contract that its value would not be destroyed by tearing it from the machinery but that the process of manufacture which had been begun would be completed in accordance with usual standards.

 Expenditures made by the trustees in completing the manufacture were, of course, properly chargeable against the product; but there is nothing in law or in reason to justify treating the yarn in process as waste and the amount received for it when the manufacturing process was completed as profit resulting from the man-

ufacture. It was not waste if the claimant was entitled to have the manufacture go forward, and claimant was entitled to this if the mills were operated under order of court, since it was the duty of the court to protect the rights of all persons having interests in the property, not merely the interests of the debtor or general creditors. If the debtor had continued the operation of the mills, the entire proceeds of the yarn would have been subject to claimant's lien. When the trustees continued the operation and took over the yarn, they did so subject to claimant's rights and may not charge against the proceeds anything in excess of the expenditures properly attributable to completing the manufacture.

On the appeal of the trustees, the order appealed from will be affirmed. On the appeal of the claimant it will be modified so as to provide that the claim is secured in the sum of $46,147.66, and as so modified it will be affirmed. The costs on both appeals will be taxed against the trustees.

Modified and affirmed.