In the Matter of **EQUITY FUNDING CORPORATION OF AMERICA**, a Delaware Corporation, Debtor.

No. 73–03467.

United States District Court, C. D. California.

Feb. 21, 1975.

See also 9 Cir., 492 F.2d 793.

O'Melveny & Myers by Everett B. Clary, A. Robert Pisano, Los Angeles, Cal., for the Trustee.

Grant G. Guthrie, Washington, D. C., and Richard A. Castro, Los Angeles, Cal., for the Securities and Exchange Commission.

Shearman & Sterling by George J. Wade, New York City, for the First Nat. City Bank, as agent.

Whitman & Ransom by Dugald Campbell Brown, New York City, and Irell & Manella by Richard L. Bernachi, Joan L. Lesser, Richard M. Sherman, Jr., Los

Angeles, Cal., for the United States Trust Co. of New York, successor indenture trustee for 5½% Convertible Subordinated Debentures Due 1991.

McCutchen, Black, Verleger & Shea by C. Richard Doty, Roger A. Ferree, Los Angeles, Cal., for Chemical Bank, Indenture Trustee.

Corinblit & Shapero by Jack Corinblit, Schwartz, Alschuler & Grossman by Marshall B. Grossman, Los Angeles, Cal., and Kirsch, Arak & Bulmash by Jay S. Bulmash, Beverly Hills, Cal., for Certain Class 8 Creditors.

## MEMORANDUM AND ORDER DENYING MOTION TO STRIKE VALUATION TESTIMONY OF MESSRS. TURNQUIST, MOORE, AND AMOS, ETC.

PREGERSON, District Judge.

This matter arises out of proceedings to reorganize Equity Funding Corporation of America under Chapter X of the Bankruptcy Act. 11 U.S.C. §§ 501–676 (West 1970). The proposed plan of reorganization filed by the Trustee on October 24, 1974, pursuant to Section 169 of the Bankruptcy Act, 11 U.S.C. § 569, envisions the formation of a new company which will have as its major assets all of the stock of two life insurance companies, Bankers National Life Insurance Co. ("Bankers") and Northern Life Insurance Co. ("Northern"). The proposed plan of reorganization contemplates the division of the debtor corporation's creditors into eight classes. During December 1974 and January 1975, the Court held hearings on whether the proposed plan is "fair and equitable and feasible." Bankruptcy Act § 221(2), 11 U.S.C. § 621(2). These hearings forcused primarily on the valuation of Bankers and Northern.

At the conclusion of the valuation hearings, counsel for certain Class 8 Creditors, which comprise defrauded shareholders of the debtor corporation, filed a written motion together with memoranda of points and authorities requesting this Court to strike the valuation opinions of Messrs. Jack Turnquist and Gene Moore from Tillinghast & Company, Inc. ("Tillinghast") and Mr. William Amos from The First Boston Corporation ("First Boston"). Counsel for certain Class 8 Creditors contend for the most part (1) that these opinions are inadmissible to determine the reorganization value of the proposed new company because these witnesses ignored the past earnings record of Bankers and Northern, because they ignored market prices and conditions, and because they ignored the pendency of litigation against Bankers; and (2) that these opinions are inadmissible and irrelevant as to the value of Bankers and Northern stock under Section 197 of the Bankruptcy Act, 11 U.S.C. § 597 (West 1970), for purposes of measuring the value of the Class 4 Creditors' collateral. For the following reasons, the Court concludes that these contentions are erroneous and that the valuation opinions are admissible.

### I. Reorganization Value

Counsel for certain Class 8 Creditors primarily object to the valuation opinions because these opinions, they contend, allegedly ignore past earnings of Bankers and Northern. This contention is erroneous. The Court believes that past earnings were considered; that due to the nature of and change in accounting methods employed, it was not feasible to give these part earnings reports more weight than they were given by the experts; that the methods of valuation which underly these opinions relate to and are probative of earning capacity of Bankers and Northern; and that the methods relied upon by the experts in forming an opinion on reorganization value were reasonable.[1]

---

1. To accomplish its valuation of Bankers and Northern, Tillinghast segmented the earning capacity of each company into three components and capitalized that earning capacity.

These three components of Bankers and Northern are:
  1. Statutory capital and surplus adjusted to appraisal basis (adjusted net worth).

■ The objections to the expert testimony in this case are predicated on the assumption that past earnings must serve as the focal point of any estimate of future earning capacity. As several cases indicate, however, the courts have not required reorganization proceedings to follow a stereotyped method of valuation. "The extent and method of inquiry necessary for a valuation based on earning capacity are necessarily dependent on the facts of each case." Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 527, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941); *see also,* Protective Com. For Ind. Stockholders v. Anderson, 390 U.S. 414, 452–53, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); Ecker v. Western Pac. R.R. Corp., 318 U.S. 448, 482–83, 63 S.Ct. 692, 87 L.Ed. 892 (1943). Although past earnings frequently are the major component of an estimate of future performance, past earnings cannot serve as the basis for evaluation of a company as a going concern when such earnings are not a reliable criterion of future performance under the circumstances of a particular reorganization. Protective Com. For Ind. Stockholders v. Anderson, *supra.*

As the record demonstrates, past earnings records of Bankers and Northern do not qualify as a reliable criterion for determining future earning capacity. Historical earnings of Bankers and Northern were reported in accordance with either statutory accounting requirements or generally accepted accounting principles ("GAAP"). Statutory accounting tends to distort the earnings picture of an insurance company. For example, under statutory accounting, the full cost of selling a new insurance policy must be charged against current income in the year of the policy sale. Since such costs generally exceed the first year premium, a company which is rapidly growing by writing an increasing amount of profitable new business will show less impressive statutory earnings than a company whose growth rate is slow. In addition, mortality and interest assumptions established by state insurance regulatory authorities are conservative. These assumptions determine the amount of reserves which must be set up to provide for future obligations. Consequently, these reserves tend to exceed the amount of reserves which in fact will be required to meet the company's future obligations. Since the total reserves of a company are reflected as a liability on the balance sheet and annual increases in reserves are reported as a charge against income in the income statement, these conservative reserves tend to decrease the statutory earnings of insurance companies.

Moreover, in the case of Bankers and Northern, it is highly impractical to utilize prior GAAP earnings to predict future GAAP earnings. For five years prior to 1974, GAAP earnings of Bankers and Northern were prepared on the basis of the exposure draft of the Audit Guide prepared by the American Institute of Certified Public Accountants. The final version of the Audit Guide containing revised GAAP factors was promulgated in December 1972 for use in reporting GAAP earnings beginning in 1974. As a result, future GAAP earnings will not be comparable to pre-1974 GAAP earnings. In addition, the prior GAAP earnings were based upon historical cost accounting, whereas future GAAP earnings reports, and the Tillinghast projections, utilize "fair value" accounting.

2. Future statutory profits on business in force December 31, 1973 discounted to that date at a risk rate of return (value of business in force).

3. The existing structure of the marketing and corporate organization of Bankers and Northern, related to the ability of each company to continue to produce new profitable business (existing structure value).

In the second appraisal, First Boston predicated its valuation of Bankers and Northern upon a capitalization of these companies' GAAP (generally acceptable accounting principles) future earning capacity. This future earning capacity was derived from a statutory and GAAP earnings projection, proposed by Tillinghast, for a ten year period from 1974 through 1983.

■ The Court is satisfied that the experts considered all factors relevant to future earning capacity. Consolidated Rock Products Co. v. Du Bois, *supra*. Although the valuations in question here are not predicated on a simple projection of average past earnings, the experts considered past earnings as thoroughly as the circumstances would permit. Values representing adjusted capital and surplus are attributable in part to past earnings. The past sales activities of Bankers and Northern as reflected in their books of business were considered. The actuarial assumptions used by Tillinghast were based in part on the prior experiences of Bankers and Northern with regard to lapse and interest rates, mortality experience, and expense factors. Mr. Amos of First Boston testified that he attempted to develop a pattern of earnings from past statutory and GAAP earnings of Bankers and Northern. Also, the past earnings records of Bankers and Northern are set forth in the Valuation Report of the First Boston Corporation and may be considered independently by this Court. Finally, the capitalization rate utilized by the experts is rooted to the past earning experience of life insurance companies of the same genre as Bankers and Northern. Therefore, the Court is satisfied that the relevant factor of past earnings was considered and weighed in accordance with its reliability and in accordance with the best expert judgment of the witnesses. This is all that the cases require.

Counsel for certain Class 8 Creditors also contend that the valuation opinions are inadmissible because the experts failed to consider market prices and price earnings ratios in rendering their opinions on reorganization value. The Court disagrees. First, it should be noted that market factors were considered. As the Securities and Exchange Commission points out in its brief, reorganization value is a forecast of future earnings converted to present value by a capitalization or discount rate. This capitalization or discount rate reflects the expected annual rate of return on an investment and the choice of this rate is a question of judgment which must reasonably relate to the rates of return generally expected by investors from comparable investment opportunities.

The relationship between the capitalization rate and market factors is demonstrated by the First Boston valuation. First Boston determined the capitalization rate for its evaluation by reference to rates at which securities markets have capitalized earnings of stock life insurance companies. Initially, First Boston concluded that the average rate for the years 1967 to 1972 was about 15.5 times earnings. It then examined the long term price earnings multiple levels in the general stock market over a period of years. This analysis indicated that the general market capitalization rate has moved from a previous level of about 17 times earnings to approximately 13 times. Since First Boston's studies indicated that life insurance stocks maintained a rate approximately two multiples lower than the general market, Mr. Amos of First Boston concluded that a representative capitalization rate for life insurance stocks would be about 11 times earnings. Finally, taking a conservative tack, First Boston assigned a capitalization rate of about 10 times earnings to Bankers and Northern in view of their prior growth rates and the inherent uncertainties in the present market place.

■ Moreover, existing market prices, conditions, and comparable sales need not be significant factors in determining reorganization value. In reorganization proceedings, it is assumed that the commercial value of property arises from the expectation of income from it. Consolidated Rock Products Co. v. Du Bois, *supra*, 312 U.S. at 526, 61 S.Ct. 675. Thus, the basic question is "how much the enterprise in all probability can earn," Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 318 U.S. 523, 540, 63 S.Ct. 727, 738, 87 L.Ed. 959

(1943), and the proper method of valuation is "to value the whole enterprise by a capitalization of prospective earnings." Consolidated Rock Products Co. v. Du Bois, *supra*, 312 U.S. at 525, 61 S.Ct. at 685. In effect, this approach frees reorganizations from prices which are pegged by forced sales or by the temporary conditions of the market place. Instead, reorganization value is intended to approach the value that would prevail in a perfect market adequately stocked with willing and informed buyers and sellers. Therefore, the Court concludes that the experts considered market factors and that the weight they gave these factors adequately accords with the concept of reorganization value.

■ Counsel further contend that the experts should have considered the potential effects of pending litigation. Since the plan of reorganization presupposes settlement of pending litigation, it would have been improper for these experts to evaluate Bankers and Northern in light of this litigation.

## II. Section 197 Value

Counsel for certain Class 8 Creditors contend that the value of the Class 4 Creditors' collateral under Section 197 of the Bankruptcy Act, 11 U.S.C. § 597 (West 1970), depends upon the amount they could have realized upon sale of the security by a willing seller to a willing buyer, and not upon reorganization value predicated on a capitalization of prospective earnings. Counsel characterize this § 197 value as "realizable value." *See* In re New York, New Haven and Hartford Railroad Co., 147 F.2d 40 (2d Cir. 1945). Consequently, they argue that the expert opinions are inadmissible for purposes of determining the extent to which a secured creditor is in fact secured under § 197. In considering this argument, it is important to note that the security involved here comprises all of the outstanding stock of Bankers and Northern.

■ The Court disagrees with counsels' contentions for two reasons.

First, it concludes that the "value of the security" as used in § 197 refers to a value predicated on the capitalization of future earnings, i. e., reorganization value, when the collateral to be valued is the entire outstanding stock of one or more operating corporations and those corporations are intended to contribute ongoing economic vitality to the reconstituted company under the plan of reorganization. Second, even if "realizable value" is the measure of the worth of collateral for § 197 purposes, the expert valuations tend to prove what this value is by indicating what a rational, informed buyer should and would pay to a willing, informed seller for these life insurance companies under normal market conditions.

■ The Court believes that the value of the Class 4 Creditors' security interest in Bankers and Northern stock should be measured by the capitalization of future earnings of these companies. If the Class 4 Creditors were not required by Chapter X proceedings to relinquish their right to foreclose on the pledged stock of Bankers and Northern, they could have "bid in" the full amount of their claim at a foreclosure sale and thereby secured either possession of all the assets of Bankers and Northern through total stock ownership or the amount of their claim in cash, if a bid by a third party exceeded the full amount of such claim. In this manner the Class 4 Creditors could have realized the amount of their claim in cash or could have become the owners of two operating insurance companies with *going concern* value.

In short, the Class 4 Creditors are required to exchange their rights under Section 57h of the Bankruptcy Act, 11 U.S.C. § 93(h) (West 1968), to obtain valuable operating assets in return for payment of their claim out of expected future earnings from those operating assets. *See* Section 102 of the Bankruptcy Act, 11 U.S.C. § 502; Section 197 of the Bankruptcy Act, 11 U.S.C. § 597. Therefore, as a *quid pro quo*

for the relinquishment of their § 57h rights, it is equitable and fair to measure the Class 4 Creditors' collateral in these Chapter X proceedings in accordance with *going concern* value of Bankers and Northern based upon a capitalization of future earnings. *See,* Reconstruction Finance Corp. v. Denver & R.G.W.R. Co., 328 U.S. 495, 517, 66 S.Ct. 1282, 1384, 90 L.Ed. 1400 (1946); In Re Dutch Woodcraft Shops, 14 F. Supp. 467 (W.D.Mich.1935); Meinhard, Greeff & Co. v. Edens, 189 F.2d 792 (4th Cir. 1951); T. Finletter, The Law of Bankruptcy Reorganization 581–82 (1939); 87 Harv.L.Rev. 1786, 1793–95 (1974). Since the values determined by the experts in this case are predicated on the capitalization of future earnings of going concerns, they are admissible for purposes of valuation under § 197.

In light of the foregoing, the motions to strike are denied.